525 A.2d 241

**STATE of Maryland, CENTRAL COLLECTION UNIT**

v.

**Laura BRENT, et al.**

**No. 1341 Sept. Term, 1986.**

Court of Special Appeals of Maryland.

May 8, 1987.

Certiorari Granted Sept. 11, 1987.

Nicolette H. Prevost, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Richard H. James, Baltimore, for appellees.

Argued before GILBERT, C.J., and ROSALYN B. BELL and KARWACKI, JJ.

GILBERT, Chief Judge.

### Foreword

The State of Maryland, through its Central Collection Unit, seeks to "sack" a spendthrift trust provision, force the guardian of an incompetent to pass, and then intercept the corpus of a trust estate. That action was blocked by the Circuit Court for Baltimore County. Apparently believing it has been "clipped," the State asks that we review the instant replay and impose a penalty—reversal.

## The facts

Laura Brent has been a patient at the Springfield State Hospital since 1950. She was adjudicated mentally incompetent in 1952, and her brother, Raleigh Brent, one of the appellees, was appointed as her guardian.

From the date of Miss Brent's admission to the hospital until 1973, the income from a trust was sufficient to pay the sums charged for her medical care. Sometime thereafter, as a result of "a periodic review of [her] financial status" by the State, it was determined that Miss Brent should pay more than just the income from the trust. Accordingly, the rate charged her was increased. The increase was not paid by Miss Brent's guardian because he was already remitting the total income received from the trust, and he was without authority to invade the corpus of the trust that was set aside for her.

The State obtained a $59,793.55 judgment against the incompetent and her guardian. The State then set out to collect it. An attachment was laid in the hands of the trustee, Mercantile Safe Deposit & Trust Company. The trustee answered the garnishment by declaring that the trust it held for Laura Brent was a "Spendthrift Trust."

Dissatisfied with the garnishee's response, the State requested and obtained a hearing. After listening to and considering the arguments of counsel, the chancellor denied to the State the right to attach the corpus of the trust.

## The law

Since *Smith v. Towers,* 69 Md. 77, 14 A. 497 (1888) (C.J. Alvey's dissent is found in 15 A. 92), Maryland has recognized the validity of spendthrift trusts. In *Smith* a testator devised real estate to his friend in trust for the testator's son Robert. The devise directed that the trustee collect the rents and profits from the realty and pay them "into ... [Robert's] own hands, and not into another, whether claiming by his authority or otherwise." *Id.* at 83, 14 A. 497.

Upon Robert's death the trustee was commanded to convey the real estate to Robert's surviving children.

The Court, after discussing cases *pro* and *con* from other jurisdictions, said:

"[W]e are of opinion, that the founder of a trust may provide in direct terms that his property shall go to his beneficiary to the exclusion of his alienees, and to the exclusion of his creditors."

69 Md. at 90–91, 14 A. 497. Thus, the "spendthrift trust" became a substructure part of Maryland law, and there ninety-nine years later it remains.

The Court has had numerous occasions to revisit the subject of spendthrift trusts, and it has consistently reiterated its *Smith v. Towers* position. *See, e.g.: Safe Deposit and Trust Company of Baltimore v. Robertson*, 192 Md. 653, 65 A.2d 292 (1949); *Medwedeff v. Fisher*, 179 Md. 192, 17 A.2d 141 (1941); *Bauernschmidt v. Safe Deposit & Trust Company*, 176 Md. 351, 4 A.2d 712 (1939); *Michaelson v. Sokolove*, 169 Md. 529, 182 A. 458 (1936); *Safe Deposit and Trust Company of Baltimore v. Independent Brewing Association*, 127 Md. 463, 96 A. 617 (1916); *Wenzel v. Powder*, 100 Md. 36, 59 A. 194 (1904); *Jackson Square Loan and Savings Association v. Bartlett*, 95 Md. 53 A. 426 (1902).

■ The *Medwedeff* court made perspicuous that the spendthrift trust clause was not just applicable to income but, irrespective of what the view may be elsewhere, in Maryland the *corpus* of a trust may also be the subject of a spendthrift trust. 179 Md. at 197, 17 A.2d at 144.

Having very briefly sketched the Maryland history of spendthrift trusts, we turn to consideration of the matter *sub judice.*

Dr. Hugh Brent in 1931 executed a Trust Agreement with the then Safe Deposit and Trust Company as trustee. By the terms of the trust, the settlor directed that, upon his wife's demise, the trust he had created for her was to be

divided into as many parts as the settlor had living children. The agreement provided in pertinent part:

*"The Trustee shall make all payments provided for hereunder directly into the hands of the beneficiary or beneficiaries hereunder entitled to receive the same and not into the hands of another howsoever claiming,* except that during the minority of any beneficiary hereunder the trustee may apply directly to his or her maintenance, education and support the payments to which he or she may be entitled to receive hereunder during his or her minority, without being required to account therefor to any Court of Law or Equity, or the Trustee may make such payments to which such minor beneficiary may be entitled to such person or persons as in the personal discretion of the Trustee may be acting in loco parentis to such minor beneficiary, the same to be applied by such person or persons so acting in loco parentis to the maintenance, education and support of such minor beneficiary, without being required to account therefor to any such Court, and the voucher of such person so acting in loco parentis to such minor beneficiary shall be a sufficient voucher and acquittance for the Trustee in respect thereto, and no assignment or order by any beneficiary of any part of the payments provided for him or her hereunder shall be valid nor shall the same be subject to attachment by garnishment or any other legal proceeding whatsoever while remaining in the hands of the Trustee hereunder."* (Emphasis supplied).

The trustee and guardian take refuge behind the spendthrift trust clause of Dr. Brent's trust and assert that they are without authority to invade the corpus of the trust so as to meet payment of the judgment.

The State contends that the trust itself permits the *cestui que trust* to demand dispersal of monies from the corpus of the trust, and, therefore, it is entitled to attach the corpus in satisfaction of the judgment. The State points to the clause of the trust that provides:

"[T]hat at any time after the attainment by [my child] of the age of thirty-five (35) years and prior to the attainment by . . . her of the age of forty (40) years, . . . she shall have the absolute right and option in writing to the Trustee to request and direct the Trustee to convey, deliver and pay over unto . . . her, free and clear of any and all further trust, any portion of the principal of . . . her respective share of the trust fund up to but not to exceed, however, one-half of the principal of . . . her respective share thereof as constituted . . . and *after the attainment by . . . her of the age of forty (40) years, . . . she shall have the absolute right and option at any time and from time to time to request and direct the Trustee to convey, deliver and pay over unto . . . her, free and clear of any and all further trust, the whole or any portion of . . . her respective share thereof remaining in the hands of the Trustee,* and upon the receipt by the Trustee of such written request and direction as hereinbefore provided, the Trustee shall convey, deliver and pay over unto . . . her the whole or such portion of the principal of . . . her respective share of the trust fund as . . . she may in such writing so request and direct to be paid over unto . . . her within the limitations as hereinbefore expressed and set forth as in the case of any child between the ages of thirty-five (35) and forty (40) years, and the trust as to such portion or the whole thereof so conveyed, delivered and paid over unto . . . her by reason of such request and direction shall cease and determine." (Emphasis supplied).

The State reasons that "[s]ince Laura Brent is [now] authorized to terminate the trust [at will], the spendthrift provision is no longer valid." To bolster its position, the State quotes from the Restatement of Trusts (Second) § 153(2) (1957), where it is said: "If the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid."

The issue raised by the State appears to be one of first impression in Maryland, but it certainly has been considered elsewhere. *See e.g. Frazier v. Wasserman,* 263 Cal.App.2d 120, 69 Cal.Rptr. 510 (1968); *Croom v. Ocala Plumbing & Electric Co.,* 62 Fla. 460, 57 So. 243 (1911); *Boston Safe Deposit and Trust Company v. Paris,* 15 Mass.App.Ct. 686, 447 N.E.2d 1268 (1983); *Smith v. Smith,* 312 Minn. 541, 253 N.W.2d 143 (1977); *First National Bank of Omaha v. First Cadco Corporation,* 189 Neb. 734, 205 N.W.2d 115 (1973); *Miles v. Miles,* 120 Neb. 436, 233 N.W. 249 (1930); *Ullman v. Cameron,* 186 N.Y. 339, 78 N.E. 1074 (1906); *Bolton v. Sproul-Bolton,* 383 Pa. 85, 117 A.2d 688 (1955); *In re Morgan's Estate,* 223 Pa. 228, 72 A. 498 (1909); *Estate of Blardone v. McConneco,* 604 S.W.2d 278 (Tex.Civ.App.), *aff'd,* 608 S.W.2d 618 (1980); *In re Manley's Estate,* 112 Vt. 314, 24 A.2d 357 (1942).

The cases cited immediately above all stand for the proposition that when the purpose of the trust has been achieved, or because of the occurrence of a certain contingency, the beneficiary may terminate the trust, at will, the trust is, thereby, terminated insofar as creditors are concerned. A creditor's rights may not thereafter be defeated by allowing the trustee, with the beneficiary's acquiescence, to retain control of the corpus of the trust.

■ Based on the reasoning of those cases, we are convinced that a beneficiary's right to the corpus of a trust vests upon the beneficiary's satisfying any contingency specified in the trust. Neither the beneficiary nor the trustee can thereafter defeat the rights of the creditors of the beneficiary by allowing the corpus to remain in the hands of the trustee. In short, the spendthrift trust terminates when the beneficiary satisfies the contingency specified in the trust. From that point in time forward, the spendthrift trust is invalid as against the beneficiary's creditors. If the law were otherwise, a beneficiary could, in effect, create a spendthrift trust for his or her own benefit and thereby forever foreclose a creditor's rights. To accomplish that end, all the beneficiary would have to do

would be not to demand payment of the corpus from the trustee. The beneficiary would, in effect, create a spendthrift trust for himself or herself and thereby completely frustrate his or her creditors. We think that result would be a fraud on creditors, contrary to public policy and hence void.

Ordinarily, we would end our opinion at this juncture, but we must still resolve whether what we have said applies to a *non compos mentis cestui que trust*. Does the fact that the beneficiary is adjudicated incompetent alter our holding?

The guardian and trustee argue that Miss Brent is incompetent and unable to exercise her option of terminating the trust. Because, they assert, her "mental problem" is permanent, "she will probably never be able to [terminate the trust]."

█ The law, as we have seen, permits a creditor to reach the corpus of the trust whenever the beneficiary of a spendthrift trust could have terminated the trust. The fact that the beneficiary is incompetent, and hence unable to make a valid decision, does not extend the life of the spendthrift trust beyond the settlor's intention. By its terms the instant trust protects minors but is mute as to incompetents. The settlor could have protected an incompetent beneficiary simply by creating a discretionary trust, *i.e.,* conferring uncontrolled discretion upon the trustee as to the manner and terms of payment to the beneficiary of all or part of the principal or income of the trust. Furthermore, the settlor could have provided in the trust that in the event that a *cestui que trust* became *incompetent,* the trust would not terminate as to that particular beneficiary during the period of incompetency. Significantly, neither of those provisions is contained in Dr. Brent's trust.

The appellees assert that, if the State is allowed to reach a portion of the corpus now and perhaps another portion at a later time, Miss Brent might be rendered a pauper. In that event, they aver, she might become a public charge.

We cannot help but observe that to a great extent, she already is a public charge. The State, *i.e.*, the people, are paying what we infer is the "lion's share" of the costs of maintaining Miss Brent in Springfield State Hospital. Since she has the means of paying the costs of her past care, there is no rational basis for shifting that cost to the taxpayers, thereby enabling Miss Brent's kin to inherit the corpus of her trust, free and clear of any lien.[1] We think that permitting that eventuality to occur would be contrary to public policy.

In light of our holding, we do not reach the other issues raised by the State, inasmuch as they are mooted by our decision.[2]

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.

---

1. The Trust provides that if a child dies without descendents that child's share of the trust shall be distributed to the other descendents of the settlor, Dr. Brent.

2. Those issues were: whether the spendthrift provision prevents the trustee from using the trust corpus to pay the cost of necessaries supplied to the beneficiary, and whether the beneficiary's guardian may exercise the beneficiary's option to terminate the trust to pay the claim for necessaries provided to the beneficiary.