537 A.2d 227

**Laura BRENT et al.**

v.

**STATE OF MARYLAND CENTRAL COLLECTION UNIT.**

**No. 100, Sept. Term, 1987.**

Court of Appeals of Maryland.

Feb. 11, 1988.
Motion for Reconsideration Denied March 7, 1988.

Richard H. James, Baltimore, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

We are called upon in this case to determine the sanctity of the spendthrift provisions of a trust agreement. The agreement was executed over 50 years ago by Dr. Hugh Warren Brent as the "settlor" and Safe Deposit and Trust Company of Baltimore (now Mercantile Safe Deposit and Trust Co.) as the "Trustee."

I

The trust agreement called for the income from the corpus to be paid to settlor's surviving widow for her natural life. At her death, the fund was to be divided into three parts, one for each of settlor's children. In 1950, Laura Brent, one of the settlor's children, then 29 years of age, became a patient at Springfield State Hospital. The settlor died in 1933, and his widow, Laura's mother, who was receiving the income from the trust, paid for Laura's care at the institution. The mother died in 1952. Laura was judicially declared incompetent and her brother, Raleigh, was appointed her Committee. The Department of Health and Mental Hygiene investigated the ability of Laura and her Committee to pay for her care in the Springfield State Hospital Center. A rate was established to cover those costs. The income from her trust was sufficient to

pay for Laura's maintenance at the rate established and the State was paid therefrom. In 1973 Laura's financial status was reviewed and the rate of payment for her care was increased. The increased rate was upheld on an administrative appeal and there was no judicial appeal.

In the latter part of 1982 the State of Maryland, Central Collection Unit, filed suit in the Circuit Court for Carroll County against Laura, as an incompetent, and her Committee (hereinafter referred to as "Brent"). The State sought a judgment to cover the unpaid balance for Laura's care at Springfield for some years past—through February 28, 1980. A judgment was entered by consent in favor of the State against Brent for $59,793.55 plus interest and costs. Since the mother's death, the State had been receiving the income from Laura's share of the trust and applying it to the costs of her care. There is no dispute concerning those payments. The judgment, however, could not be satisfied without invading the corpus. The State filed suit in the Circuit Court for Baltimore County against Brent and joined the Trustee as garnishee. The judgment was therein recorded and the State obtained a writ of garnishment. The Trustee took the position that the trust property was not subject to garnishment. Upon hearing, the court agreed with the Trustee. The State appealed to the Court of Special Appeals. The court reversed the circuit court. *State, Cent. Collection Unit v. Brent,* 71 Md.App. 265, 525 A.2d 241 (1987). We granted a petition by Brent and the Trustee and a conditional cross petition by the State for the issuance of a writ of certiorari.

## II

The trust agreement provided that the trust fund be equally divided at the death of settlor's wife among the then surviving children. The income from each share was to be paid to each beneficiary for life. With respect to the corpus, it provided that

at any time after the attainment by him or her of the age of thirty-five (35) years and prior to the attainment by

him or her of the age of forty (40) years, he or she shall have the absolute right and option in writing to the Trustee to request and direct the Trustee to convey, deliver and pay over unto him or her, free and clear of any and all further trust, any portion of the principal of his or her respective share of the trust fund up to but not to exceed, however, one-half of the principal of his or her respective share thereof as constituted at the time of the division thereof into equal shares as hereinbefore provided....

The agreement further provided that

after the attainment by him or her of the age of forty (40) years, he or she shall have the absolute right and option at any time and from time to time to request and direct the Trustee to convey, deliver and pay over unto him or her, free and clear of any and all further trust, the whole or any portion of his or her respective share thereof remaining in the hands of the Trustee, and upon the receipt by the Trustee of such written request and direction as hereinbefore provided, the Trustee shall convey, deliver and pay over unto him or her the whole or such portion of the principal of his or her respective share of the trust fund as he or she may in such writing so request and direct to be paid over unto him or her within the limitations as hereinbefore expressed and set forth as in the case of any child between the ages of thirty-five (35) and forty (40) years....

The agreement stated:

[T]he trust as to such portion or the whole thereof so conveyed, delivered and paid over unto him or her by reason of such request and direction shall cease and determine.

Subject to an exception applicable to payments made for the maintenance, education and support of a minor beneficiary, the agreement commanded:

The Trustee shall make all payments provided for hereunder directly into the hands of the beneficiary or beneficiaries hereunder entitled to receive the same and not into

the hands of another howsoever claiming ... and no assignment or order by any beneficiary of any part of the payments provided for him or her hereunder shall be valid nor shall the same be subject to attachment by garnishment or any other legal proceeding whatsoever while remaining in the hands of the Trustee hereunder.

This last mandate served as the basis of the Trustee's refusal to honor the writ of garnishment.

## III

As a general rule,

creditors of the beneficiary of a trust can by appropriate proceedings reach his interest and thereby subject it to the satisfaction of their claims against him.

Restatement (Second) of Trusts § 147 (1959). Early on this Court declared:

It is wholly against the policy of the law to allow property, whether legal or equitable, to be fettered by restraints upon alienation, and generally whenever property is subject to alienation by the owner it is subject to his debts.

*Warner v. Rice,* 66 Md. 436, 440, 8 A. 84 (1887). This was quoted with approval in *Baker v. Keiser,* 75 Md. 332, 338, 23 A. 735 (1892), and has not been eroded in Maryland over the years. *See Real Estate Co. v. Serio,* 156 Md. 229, 233, 144 A. 245 (1929); *Gischell v. Ballman,* 131 Md. 260, 264, 101 A. 698 (1917).

One hundred years ago, however, this Court had before it a clause in a will whereby the testator devised certain real estate to a friend in trust with the duty to collect the rents and profits, and pay them to the testator's son. The income was to be paid "into [the son's] own hands, and not into another, whether claiming by his authority or otherwise...." Upon the death of the son, the property was to be conveyed to the then living children of the son. *Smith v. Towers,* 69 Md. 77, 83, 14 A. 497 (1888). A majority of the Court found that the clause clearly expressed the intention of the testator to give the income of the property to the son to the exclusion of the son's creditors. It determined that

the terms and provisions of the will were "effectual to carry out this intention." *Id.* The majority reached this second conclusion, despite English decisions to the contrary and after consideration of conflicting decisions in this country. It opined

> [u]pon principle ... that the founder of a trust may provide in direct terms that his property shall go to his beneficiary to the exclusion of his alienees, and to the exclusion of his creditors.

*Id.* at 90, 14 A. 497. Thus, under the direct terms of the will, the income in the hands of the trustee could not "be reached by [the son's] creditors by any process, either at law or in equity, before such rents and profits [were] paid to him." *Id.* at 91, 14 A. 497. So was born the "spendthrift trust" in Maryland.[1] Restatement (Second) of Trusts § 152(2) (1959) defines a "spendthrift trust" as

> [a] trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed....

*Medwedeff v. Fisher,* 179 Md. 192, 17 A.2d 141 (1941), made clear that in Maryland the principal of a trust, as well as income, can be subjected to a spendthrift clause, "even though principal and income are payable to the same beneficiary." *Id.* at 197, 17 A.2d 141. In the years intervening since *Smith v. Towers,* this Court has addressed the matter of spendthrift trusts on a number of occasions and has steadfastly adhered to the position it took in that case. *See* cases cited in *State, Cent. Collection Unit v. Brent,* 71 Md.App. at 268, 525 A.2d 241. And *see Hoffman Chev. v. Wash. Co. Nat'l Sav.,* 297 Md. 691, 706, 467 A.2d 758 (1983).

It is axiomatic that the intention of the settlor governs the interpretation of a trust agreement. The intention is ordinarily ascertained from the language of the provisions

---

1. A person may not create a spendthrift trust for his own benefit. *Brown v. Macgill,* 87 Md. 161, 164–168, 39 A. 613 (1898). *See Warner v. Rice,* 66 Md. 436, 441–443, 8 A. 84 (1887); *Watterson v. Edgerly,* 40 Md.App. 230, 232, 388 A.2d 934 (1978); Restatement (Second) of Trusts § 156 and § 152 comment m (1959).

of the agreement. It is not disputed that the settlor in the case we here decide intended to create a spendthrift trust. Nor is it contended that the spendthrift clause did not apply to the funds set aside for each child, including those for Laura. But the intention of the settlor cannot prevail over recognized legal principles and the spendthrift provisions must be valid in the eyes of the law.

When the State obtained the writ of garnishment, Laura was well past the age of 40 years. There had been no prior attempt to invade the principal of her trust. But since 1961, when she attained the age of 40 years, she had, as we have indicated, the

absolute right and option ... to request and direct the Trustee to convey, deliver and pay over unto ... her, free and clear of any and all further trust, the whole or any portion of ... her respective share thereof remaining in the hands of the Trustee....

██ The question is the status of the spendthrift provisions with respect to Laura's trust at the time the writ of garnishment issued. If the Provisions were effective against creditors at that time, the circuit court was correct. If they had become ineffectual, the Court of Special Appeals properly reversed the judgment of the Circuit Court for Baltimore County.

It appeared to the Court of Special Appeals that the issue we are called upon to resolve is "one of first impression in Maryland...." *Brent,* 71 Md.App. at 271, 525 A.2d 241. We agree. There is no controlling Maryland judicial opinion or statute on the matter. We, therefore, look to authorities elsewhere, as did the Court of Special Appeals in reaching its decision, and as did the State in argument before us.

Two views emerge from an examination of the cases decided in our sister states.

It has been held that where by the terms of the trust a beneficiary is entitled at some future time to receive the

> principal of the trust estate and that time has arrived but the trustee has not yet paid the principal to him, a restraint on the alienation of his interest, even if valid up to that time, ceases to be effective.

2A A. Scott & W. Fratcher, *Scott on Trusts* § 153 at 133 (4th ed. 1987). This statement is supported by authorities listed under note 7 to the section.

> There is authority, however, to the effect that the restraint on alienation of the right to receive the principal is effective until the principal is actually paid over to the beneficiary.

*Id.* at 133–134. This statement is supported by the authorities listed under note 8 of § 153.

The first view is in accord with the Restatement (Second) of Trusts (1959). Section 153(1) recognizes, with exceptions not here relevant, the validity of a restraint on the voluntary or involuntary transfer of the interest of a beneficiary when by the terms of the trust he is entitled to have the principal conveyed to him at a future time. But § 153(2) declares that when a beneficiary is entitled to have the principal paid or conveyed to him immediately or at any time he may call for it, a restraint on alienation of his interest is invalid. *See* § 153(2) comment c.

We have examined a fair sampling of the cases in other jurisdictions relating to the issue. With respect to the first view, we notice that years ago the court in *Ullman v. Cameron*, 186 N.Y. 339, 78 N.E. 1074 (1906), stated what proved to be an alembic of the principles inherent in the first view.

> [It is] contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his creditors.

*Id.* at 346, 78 N.E. 1074. The rationale of this doctrine was explained by the court thus:

> [A]s to my creditors, property is mine which becomes mine for the asking, and no words can make an instrument strong enough to hold it for me, and keep it from them.[2]

*Id.*

A significant number of states have followed the lead of *Ullman.* By judicial decision, and at times by statute, they have embraced the principle that when the beneficiary attains the right to a distribution of the corpus of the trust fund, the immunity of that corpus from attachments and alienations is ineffectual. The cases to that end indicate that

> [i]t is uniformly held to be against public policy to permit a person to tie up his own property in such a way that he can still enjoy it but can prevent his creditors from reaching it.

*First Nat. Bank of Omaha v. First Cadco Corp.,* 189 Neb. 734, 738, 205 N.W.2d 115 (1973). The key is the right of the beneficiary to the corpus as distinguished from his actual possession of it. So the rights of the creditors depend upon the beneficiary's interest in the property, not on the actual distribution of the fund to him. *Sproul–Bolton v. Sproul–Bolton,* 383 Pa. 85, 94, 117 A.2d 688 (1955).

> It would seem clear that as soon as [the beneficiary's] right to receive his share of the principal accrued it became his property and he could immediately thereupon have compelled its conveyance to him; the trust thenceforth was a dry trust and neither [the beneficiary] nor the trustees could thereafter defeat the rights of creditors with respect to the principal of the trust merely by allowing it, deliberately or otherwise, to remain in the

---

**2.** The terms of the spendthrift trust in *Ullman v. Cameron,* 186 N.Y. 339, 78 N.E. 1074 (1906), were comparable as to withdrawal of the corpus to those in the trust now before us. The beneficiary in *Ullman* had the right to invade the corpus of the trust at will by simply notifying the trustee. The trustee had no discretion upon an appropriate demand but was required to pay over whatever was asked for, even to the extent of the whole fund. *Id.* at 345, 78 N.E. 1074.

trustees' hands.[3]

*Id.* at 93–94, 117 A.2d 688.

It follows that

[t]he very fact that power is given which may be used by the [beneficiary] to apply the fund in whole or in part to the payment of his debts, is an investiture pro tanto of ownership.

\*      \*      \*      \*      \*      \*

When a donor substitutes for his own absolute right of disposition, the pleasure of the donee, the gift is absolute. *Morgan's Estate (No. 1),* 223 Pa. 228, 231, 72 A. 498 (1909). This is in accord with the general rule that "if the beneficiary can call for the principal at will, there is in substance, no condition precedent, and the beneficiary is considered at this point to be the sole owner of the corpus." *Estate of Blardone v. McConnico,* Tex.Civ.App. 604 S.W.2d 278, 281 (1980).

If the beneficiary has the absolute right to receive the corpus, the fact that he did not choose to exercise the power is "wholly immaterial." *Morgan's Estate (No. 1),* 223 Pa. at 231, 72 A. 498.

The right absolute given the donee to require the trustee to convey [the corpus] absolutely, strips the trust of every active duty and of every right of control [within the ambit of the right], beyond the pleasure of the donee. *The result ... is not dependent on the exercise of the right; it inheres in and results from the very power itself.*

*Id.* at 232, 72 A. 498 (emphasis added). *Frazier v. Wasserman,* 263 Cal.App.2d 120, 127, 69 Cal.Rptr. 510 (1968), put it this way:

[O]nce the corpus of a spendthrift trust vests in the beneficiary and is placed in his hands, or *under his direct control,* it may not only be dissipated by the beneficiary

---

**3.** Maryland recognizes the dry trust theory. *Hoffman Chev. v. Wash. Co. Nat'nl Sav.,* 297 Md. 691, 707–708, 467 A.2d 758 (1983).

contrary to what the donor may have wanted, but it may also be reached by the beneficiary's creditors through attachment or execution to satisfy his debts (antecedent or otherwise).

(Emphasis added.) This is so even though the beneficiary has the right to request of and to receive from the trustee the corpus of the trust but need not and does not make such request. It is enough that the corpus is *subject* to withdrawal by him. *Smith v. Smith,* 312 Minn. 541, 545, 253 N.W.2d 143 (1977). In short,

[t]he general rule is that when one has an interest in property which he may alien or assign, that interest, whether legal or equitable, is liable for the payment of his debts.

*Croom v. Ocala Plumbing & Electric Co.,* 62 Fla. 460, 466, 57 So. 243 (1911). *See, La Salle Nat. Bank v. MacDonald,* 2 Ill.2d 581, 119 N.E.2d 266 (1954); *Friese v. Friese,* 373 Ill. 216, 25 N.E.2d 788 (1940); *Boston Safe Deposit & Trust Co. v. Paris,* 15 Mass.App.Ct. 686, 447 N.E.2d 1268 (1983); *Erickson v. Erickson,* 197 Minn. 71, 266 N.W. 161 (1936); *Miles v. Miles,* 120 Neb. 436, 233 N.W. 249 (1930); *In re Manley Estate,* 112 Vt. 314, 24 A.2d 357 (1942).

The Court of Special Appeals was persuaded by this line of cases that at the time the writ of garnishment issued, the restraint on alienation of the corpus was ineffectual. It believed that the cases

all stand for the proposition that when the purpose of the trust has been achieved, or because of the occurrence of a certain contingency, the beneficiary may terminate the trust, at will, the trust is, thereby, terminated insofar as creditors are concerned. A creditor's rights may not thereafter be defeated by allowing the trustee, with the beneficiary's acquiescence, to retain control of the corpus of the trust.

*Brent,* 71 Md.App. at 271, 525 A.2d 241. The intermediate court, impressed by the reasoning of those cases, adopted the proposition the cases embraced. The court held that

a beneficiary's right to the corpus of a trust vests upon the beneficiary's satisfying any contingency specified in the trust.

*Id.* It concluded that thereafter

[n]either the beneficiary nor the trustee can ... defeat the rights of the creditors of the beneficiary by allowing the corpus to remain in the hands of the trustee.

*Id.* It summarized its decision:

In short, the spendthrift trust terminates when the beneficiary satisfies the contingency specified in the trust. From that point in time forward, the spendthrift trust is invalid as against the beneficiary's creditors.

*Id.*

In our reach for a determination as to which view should become the law of this State, we find little assistance in the brief and argument of the Appellants–Petitioners. They do not refer us to a single case out of this State in support of their contention that the corpus of the trust was not subject to the writ of garnishment. They do not discuss or attempt to distinguish the cases in other jurisdictions relied on by the Court of Special Appeals in reaching its decision. As we can best understand their position, they would have us decide this case under our holding in *First Nat'l Bk. v. Dep't of Health*, 284 Md. 720, 399 A.2d 891 (1979), which they characterize as "the only reported case we have for precedent here...." They wonder why the Court of Special Appeals did not mention it. The reason is that the case concerned a "discretionary trust," not a spendthrift trust. The Court asserted that a discretionary trust "precludes any argument that the trustees can be compelled to pay the principal of the trust for [the beneficiary's] care at Spring Grove unless it can be shown that they acted 'dishonestly or arbitrarily or from an improper motive.'" *Id.* at 730. Although Appellants–Petitioners recognize that the trust with which we are here concerned is not a discretionary trust but a spendthrift trust, they

cannot understand why, if in the *First National* case (supra), the creditor is prohibited from invading the corpus, (where, in that case, the Trustee had already paid some funds out of corpus to the hospital, in its discretion); and in the Brent case here before as a Trustee, who has no discretion, is supposed to be legally bound to pay over the entire corpus of a Trust to a creditor who knew of the legal restraints over 30 years ago.

We see no need to address this recondite argument further. They also urge that "[u]nder Maryland law no attachment is valid against the corpus of a spendthrift trust until said funds reach the beneficiary." They cite two cases of this Court in support of this claim but the cases are factually inapposite and legally inappropriate. So again we look for guidance beyond the borders of Maryland. We have scanned a fair sampling of the relatively few cases which represent the second view—that restraint on the alienation of the corpus prevails until the corpus has actually been paid over to the beneficiary. *See,* for example, *Darling v. Dodge,* 200 Iowa 1303, 206 N.W. 266 (1925), followed on the same trust instrument in *Ober v. Dodge,* 210 Iowa 643, 231 N.W. 444 (1930); *Trust Created Under Agree. With McLaughlin,* 361 N.W.2d 43 (Minn.1985); *Williams v. Frisbee,* 419 S.W.2d 99 (Mo.1967); *Lippincott v. Evens,* 35 N.J.Eq. 553 (1882); *Clark v. Clark,* 411 Pa. 251, 191 A.2d 417 (1963).

We are not persuaded to the view espoused by this line of cases. As to the cases above cited, the decision in *Darling* and followed in *Ober* "seems preposterous" to E.H. Griswold, *Spendthrift Trusts* § 447 n. 8 (2d ed. 1947), and to us. In *McLaughlin* there was question whether the right to demand had accrued. In *Williams* the court found that distribution was permissive, not mandatory and concluded therefore that the funds were not available to the "creditors of the beneficiary until actually paid to her." 419 S.W. at 102. The holding in *Lippincott* was governed by a jurisdictional statute. *Clark* was decided in the face of an agree-

ment to alienate the corpus before the happening of the contingency which would terminate the trust.

Laura's interest in the corpus of the trust was subject to the condition that she attain the age of 40 years. This condition had been satisfied. Upon the satisfaction of that condition, Laura's right to have the corpus actually distributed to her was subject to the condition that she make written demand, which had not been satisfied. Professor Griswold speaks to the matter of demand for distribution of the corpus.

> Property may be given on trust for a person subject to a condition precedent which is entirely dependent on his own will. Thus the trustee may be directed to hold the property until the beneficiary demands it. *Such a condition is quite illusory. It is really no condition at all, and the courts have rightly held in many cases that the trust property is subject to the claims of the creditors of the beneficiary.*

E.H. Griswold, *supra*, § 447 at 528 (emphasis added).

We are convinced that the first of the views we herein consider is the one to follow. We are satisfied that cases supporting it are the better reasoned, that they are based on sound legal concepts, and that they reflect wise public policy. We are not persuaded to the contrary by the authorities holding to the second view nor by the obtuse and inadequately supported argument of Brent. We accept the first view and shall decide this case in the light of its principles. This conclusion is in accord with the sentiment we expressed years ago in *Baker v. Keiser,* 75 Md. at 339, 23 A. 735, and quoted with approval in *Brown v. Macgill,* 87 Md. at 165, 39 A. 613:

> This Court went as far as it could in the *Towers' case* to effect the intention of the testator which was so expressly declared; but proper adherence to the policy of the law in the State, will not allow the extension of the doctrine of the *Towers' case* beyond the limitations of that decision, nor to a case not falling clearly within its reasons and reasoning...."

■ Before we can reach a final determination, however, there is another matter which must be resolved, namely, the effect of the judicially declared incompetency of the beneficiary Laura. Before the Court of Special Appeals Brent argued that inasmuch as Laura was incompetent and her disability permanent, "she will probably never be able to [terminate the trust]." *Brent*, 71 Md.App. at 272, 525 A.2d 241. The court answered:

The law, as we have seen, permits a creditor to reach the corpus of the trust whenever the beneficiary of a spend-thrift trust could have terminated the trust.

*Id.* This is correct under the view we have decided to follow. The court continued:

The fact that the beneficiary is incompetent, and hence unable to make a valid decision, does not extend the life of the spendthrift trust beyond the settlor's intention. By its terms the instant trust protects minors but is mute as to incompetents. The settlor could have protected an incompetent beneficiary simply by creating a discretion-ary trust, *i.e.*, conferring uncontrolled discretion upon the trustee as to the manner and terms of payment to the beneficiary of all or part of the principal or income of the trust. Furthermore, the settlor could have provided in the trust that in the event that a *cestui que trust* became *incompetent*, the trust would not terminate as to that particular beneficiary during the period of incompetency. Significantly, neither of those provisions is contained in Dr. Brent's trust.

*Id.* (emphasis in original).

As the Court of Special Appeals indicated, the settlor in the case *sub judice* used no words which even intimated that the distribution of the principal upon demand be de-ferred for any reason. He showed no interest whatsoever in the preservation of the corpus intact upon demand to distribute it. He did not see fit to direct postponement of the distribution of the principal in the unhappy event of the legal disability of the beneficiary. *See La Salle Nat. Bank v. MacDonald*, 2 Ill.2d 581, 119 N.E.2d 266. Had the settlor

intended to these ends, he could have easily so provided in the agreement. We conclude that, in the circumstances, under the law we have found to be applicable, Laura's incompetency had no bearing on the question of the validity of the spendthrift provisions. It was her *right* to demand distribution of the corpus that governed, not her *ability* to demand. Moreover, the voluntary distribution of the corpus of Laura's trust was not absolutely precluded due to her inability because of her incompetency to make a valid demand as required by the trust instrument. Her Committee is within the definition of "guardian" set out in Maryland Code (1974) § 13–101(e) of the Estates and Trusts Article. "The term 'guardian' is a generic term used to describe a person or institution appointed by the Court to manage the property of a minor or a disabled person. It includes the terms 'committee' and 'conservator' used in prior Maryland practice." Comment to former Art. 93A, § 101 of the Maryland Code (1957). Former Art. 93A, § 101 appears now as § 13–101 of the Estates and Trusts Article of the Maryland Code (1974). Section 15–102(w) of the Estates and Trusts Article provides:

A guardian may exercise any inter vivos power which the minor or disabled person could have exercised under an instrument, including the power to sell, mortgage, or lease.

When the view we have elected to follow in Maryland is considered in the light of the terms of the trust agreement and the surrounding facts and circumstances, it is apparent that the spendthrift provisions were no longer effectual against Laura's creditors when the writ of attachment issued. The spendthrift provisions with respect to the entire trust fund became ineffectual when Laura attained the age of 40 years because her absolute right then to demand the distribution of the fund terminated the trust and rendered it subject to her creditors. Of course, she could leave the fund in trust if she desired, but if it remained in the hands of the Trustee, the direction to "make all payments ... directly into the hands of the

beneficiary ... and not into the hands of another howsoever claiming ..." had become ineffectual. And the declaration that

> no assignment or order by any beneficiary of any part of the payments provided for [the beneficiary] shall be valid nor shall the same be subject to attachment by garnishment. or any other legal proceeding whatsoever while remaining in the hands of the Trustee ...

had become invalid. Therefore, garnishment pursuant to the writ of attachment was proper. The Court of Special Appeals was correct in reversing the judgment of the Circuit Court for Baltimore County. We so hold.[4]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY APPELLANTS–PETITIONERS.

---

**4.** Our holding makes it unnecessary for us to address the issues presented in the State's cross petition, namely, whether the spendthrift provision prevents the trustee from using the trust corpus to pay the cost of necessaries supplied to the beneficiary, and whether the beneficiary's guardian may exercise the beneficiary's option to terminate the trust to pay the claim for necessaries provided to the beneficiary.