**In re William Parker CHEATHAM, Karen Harris Cheatham, Debtors.**

No. 03–31928–WRS.

United States Bankruptcy Court, M.D. Alabama.

May 7, 2004.

Earl Gillian, Jr., Montgomery, AL, for Debtors.

Janie Salmon Gilliland, Montgomery, AL, for Trustee.

Tom McGregor, Montgomery, AL, Trustee.

*Memorandum Decision*

WILLIAM R. SAWYER, Bankruptcy Judge.

This Chapter 7 bankruptcy case is before the Court upon the Trustee's Objection to Debtors' Claim of Exemptions.

(Doc. 7). The parties have submitted briefs (Docs. 15, 18, 19, 22, and 23) and there are no material facts in dispute. Upon consideration of the pleadings, the arguments and stipulations of counsel, and having considered the briefs on file, the Court overrules the Trustee's objection. The Court finds that the Prepaid Affordable College Tuition Program contract benefits are property of the Debtors' children and for this reason are not property of the estate.

## I. FACTS

The Debtors filed a petition under Chapter 7 of the Bankruptcy Code on June 24, 2003. (Doc. 1). On the schedules filed with their petition, the Debtors claimed as exempt two contracts issued pursuant to the Prepaid Affordable College Tuition Program ("PACT Contracts"). (Doc. 1, Sch. C). Under the Alabama Master-PACT program, a purchaser enters into a contract to prepay instate college tuition and mandatory fees on behalf of a qualified beneficiary. (Doc. 15, Ex. 1). In this case, the Debtors purchased contracts on behalf of their two minor children. The Debtors claimed the entire amount of the PACT Accounts ($5,173.00 in the daughter's account and $9,463.00 in the son's account) exempt pursuant to ALA.CODE § 19-3-1. ("Express trust for support, maintenance and education of relative; qualified trust under Internal Revenue Code; definitions"). The Debtors later amended their Schedule C to claim also the exemption pursuant to ALA.CODE § 27–14–32. (Doc. 13). See § 27–14–32 ("Exemption from debt of proceeds—Annuity contracts."). The Trustee objects to those claims of exemption. (Docs. 7, 15, 19 and 22).

Before the Court reaches the question of whether the PACT contracts are exempt property, it must first determine whether they are property of the bankruptcy estate pursuant to 11 U.S.C. § 541. The Court held a status conference on February 3, 2004, and specifically inquired of the parties about this question. (See Doc. 20, Order Setting Status Conference). At that conference, the parties stipulated that the Debtors' testimony would be that they intended to make a transfer to their children at the time the contracts were funded. Given this stipulation, it was not necessary for the Court to conduct an evidentiary hearing.

## II. LEGAL CONCLUSIONS

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B).

### A. Procedural Setting

■ When a debtor files a petition in bankruptcy under Chapter 7 of the Bankruptcy Code, an estate is created. This estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). It is the Trustee's duty to gather up the property of the estate, convert it to cash, and cause the cash proceeds to be distributed to creditors in accordance with the scheme prescribed by Congress. 11 U.S.C. §§ 704, 726. To mitigate the severity of the forced liquidation of the debtor's property, Congress has provided that debtors may set apart certain of their property as exempt. 11 U.S.C. § 522. Congress further provided that the States may opt out of the Federal exemption scheme and provide their own. 11 U.S.C. § 522(b). Alabama has done that. See ALA.CODE § 6–10–11. Therefore, Alabama state law governs the propriety of a claim for exemption in bankruptcy cases filed in Alabama. See e.g., In re Simmons, 308 B.R. 559, 561–62 (Bankr. M.D.Ala.2004); In re Perine, 46 B.R. 695, 696 (S.D.Ala.1983).

It is also the duty of the Trustee to examine the debtor's claim of exemption and, when appropriate, make an objection. 11 U.S.C. § 522; FED. R. BANKR.P. 4003(b). In the case at bar, the Debtors' claimed the PACT contracts as exempt pursuant to Alabama Code Sections 19–3–1 and 27–14–32. This contested matter arose in the context of the Trustee's objection to the Debtors' claim of exemption. (Doc. 7).

The contested matter at issue raises two separate issues. The first issue is whether the property in question is property of the estate. If the answer to that question is affirmative, the next question is whether the subject property properly may be claimed as exempt. In the case at bar, the Court has answered the first question in the negative, therefore it is unnecessary to reach the second question.

### B. The PACT Contracts are not property of the estate

■ The estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see In re Thomas,* 883 F.2d 991, 995 (11th Cir.1989). The question in this case is what interest, if any, did the Debtors own in the PACT contracts as of the date of the bankruptcy petition?

The Debtors filed their petition in bankruptcy on June 24, 2003. (Doc. 1). At least one of the PACT contracts in question appears to have been funded at some point during the month of May, 1993, 10 years earlier. This is inferred from the heading on Trustee's Exhibit No. 1 which states as follows: "Master PACT, For Spring 1993 Enrollment Period, May 1, 1993—May 31, 1993." (Doc. 15, Ex. 1). Schedule I indicates that the Debtors have two children, ages 12 and 7. It would appear that the older child's PACT contract was funded in May of 1993 and the younger child's account would necessarily have been funded at some later point in time.

While the precise dates upon which the contacts were funded cannot be determined with certainty from the Court's record, it is undisputed that the transfers to the PACT program were not fraudulent conveyances because the Trustee makes no such argument in this case. If the funding of the PACT contract is a transfer from the Debtors to their children which is made as of the date on which the contract is funded, it would appear that the Debtors no longer had an interest in the funds, or the contract after that time.

The PACT program was created by an act of the Alabama legislature in 1990. 1990 Ala. Acts 90–570; *see* ALA.CODE § 16–33C–1 *et seq.* The intention of the Alabama Legislature was expressed as follows:

> It is therefore the legislative intent of this act to establish an educational trust fund as an agency and instrumentality of the State of Alabama to assist qualified students to pay in advance the tuition costs of attending state colleges and universities and thereby to encourage such qualified students to attend state colleges and universities in the State of Alabama.

1990 Ala. Acts. 90–570. Therefore, it was the intention of the Alabama legislature that this program provide a means to pay, in advance, the costs of tuition at state colleges and universities.

The PACT contract provides, in part, as follows:

> The P.A.C.T. Program guarantees payment of undergraduate Instate Tuition and Mandatory Fees on behalf of the Qualified Beneficiary to the Alabama Public Postsecondary Institution in which the Qualified Beneficiary matriculates.

P.A.C.T. Contract, Section III. (Doc. 15, Ex. 1).

By prepaying college tuition, one may minimize the risk of tuition costs rising at a rate greater than the interest rate on monies held in a savings account or another investment device. As contract benefits are described as "prepaid tuition," it appears that the Debtors paid their children's college tuition at the time the PACT contracts were funded. It follows then, that the contract benefits became the property of the children and were no longer the property of the parents, as of the date the contracts were funded. Further support for this conclusion may be found in the definitional section of the contracts where the children are named as beneficiaries, or "qualified beneficiaries." (Doc. 15, Ex. 1, Para. 2.01).

The Alabama Court of Civil Appeals handed down a decision which involved a PACT contract similar to the one at issue here. *Johnson v. Taylor*, 770 So.2d 1103 (Ala.Civ.App.1999) (injunction preventing father from disposing of child's property survived dismissal of petition to modify divorce decree). In its discussion of the PACT contract, the Court made the following statements:

> On May 12, 1994, the trial court entered an order enjoining the father from disposing of any of the child's personal items, allowing the child to retrieve all her personal items and her pet, and enjoining the father from impairing in any manner the *child's right and entitlement to her PACT account. Id.* at 1104. (emphasis added).

> \* \* \*

> At a hearing on the grandmother's verified complaint, the father argued that the trial court's December 14, 1995, dismissal order, wherein the trial court dismissed the pending motion for custody

pendente lite filed on October 19, 1994, acted as a dismissal of the court's earlier order dated May 12, 1994, which had *enjoined the father from spending the child's PACT money. Id.* at 1105 (emphasis added).

> \* \* \*

> The grandparents, in addition to seeking custody, had attempted to stop the father from throwing away his child's things and from invading the *child's college money. ... The injunction preventing the father from taking his child's college money* was not addressed in the order ... In its original order *enjoining the father from taking the child's college money. ... Id.* at 1105. (emphasis added).

The Alabama Court of Civil Appeals repeatedly refers to the child's rights under the PACT contract as the child's property or the child's college money. The decision in *Johnson v. Taylor* turns on a fine point of Alabama law concerning the issue of whether a temporary restraining order in a divorce proceeding survives entry of judgment. While that point of law has no bearing in this instance, it is crucial to note that the child's property interest in the PACT contract was the *raison d'être* for the decision. That is, if the PACT account were the father's property, there would be no controversy because he undoubtedly would have the right to dispose of his own property as he saw fit. The decision in *Johnson v. Taylor* recognizes that, as a matter of Alabama law, a child's rights as a beneficiary under a PACT contract, are his own property, separate and apart from the property of his parents. It therefore follows that the Trustee for the parents' bankruptcy case has no right to the benefits under the PACT contract.

The Trustee argues that the Debtors' power to terminate or cancel the contracts,

under Sections V and VI of the contract, gives rise to a property right which then would inure to the benefit of the Trustee. Careful examination of these provisions show that this is not the case. Section V of the contract provides that the contract may be cancelled or terminated. If the Court were to permit the contract to be cancelled, at the insistence of the Trustee, it would necessarily be done pursuant to Paragraph 5.06, which provides as follows:

> If the contract is cancelled because of reasons other than as stated in Sections 5.02 [death or disability of a beneficiary], 5.04 [attendance at a military academy], and 5.05 [matriculation at a college outside the United States], ... the Purchaser will receive a refund of the Redemption Value of the Contract.[1]

"Redemption Value" is defined as "the sum of all Contract payments paid to date, not including Administrative Fees, minus any amounts paid by the Trust Fund to Postsecondary Institutions on behalf of the Qualified Beneficiary, and minus a Cancellation Fee or a Termination Fee." (Doc. 15, Ex. 1, Para. 2.11). To state the matter plainly, if the contract is cancelled, the purchaser is refunded the money previously paid, less an administrative fee. Therefore, the Trust (the PACT program) not only enjoys interest free use of the money during the period in which the contract is in effect, but the Trust withdraws an administrative charge to boot. Clearly, a PACT contract is not in the nature of a savings account because it does not pay interest. The cancellation provision fur-

ther underscores the fact that the contract is one providing for the prepayment of college tuition and expenses and not a savings device, such as a bank account. The Trustee's argument that "Mr. Cheatham's purchase of the PACT contracts is similar to the purchase of a certificate of deposit or a money market fund in his name, which accrues interest," (Doc. 15, p. 7) is not well taken and is rejected. Indeed, there no reason to fund a PACT contract unless it is intended that the beneficiary will attend college. Even the worst savings device would pay at least some interest and would not impose a service charge to hold the debtor's money. Certainly, the contract provides relief in the event that the child does not attend a state college. To put the matter differently, there is not a complete forfeiture under the contract if the child does not go to a state college; however, these provisions for relief do not constitute property of the estate.

In a supplemental brief filed March 15, 2004, the Trustee argues that "it is doubtful that many parents/purchasers would invest money in PACT contracts if they thought that the child could enforce an entitlement right or legal obligation for the child to receive the benefits under the MasterPACT contract." (Doc. 22, p. 3). This argument cannot be taken seriously. First, this is exactly what the Debtors in this case intended and no doubt this is what virtually all of the other "parent/purchasers" intend.[2] The purpose of the PACT contract, as documented in the con-

---

1. This is so because none of the other cancellation provisions apply.

2. The Court scheduled a hearing for February 3, 2004, to consider whether it was the Debtors' intention to make a transfer to their children at the time the contracts were funded. (Doc. 20). Debtors' counsel proffered that it was and counsel for the Trustee stipulated to

the matter, making an evidentiary hearing unnecessary. It strikes the Court as ironic for the Trustee to stipulate that the Debtors did in fact intend to make a transfer to their children and then argue precisely to the contrary, ignoring his stipulation and citing no evidence or authority in support of his proposition.

tract itself, is to prepay college tuition. Further support may be found in the enabling legislation. ALA.CODE § 16–33C–1. The Trustee's fear that parents will be reluctant to fund PACT accounts if this Court determines that the right to terminate the contract is not property of the bankruptcy estate is not well founded. The Trustee's argument rests on the assumption that parents who later become insolvent would favor paying their creditors rather than funding their children's college education. Indeed, it would seem that if parents knew that money used to prepay their children's college tuition could not be taken years later by a trustee in bankruptcy, in the event that the parents suffered financial reversals, it would make them more likely to fund PACT contracts. The result reached by the Court today is consistent with the State's purpose of increasing the number of qualified students who are able to attend State universities. 1990 Ala. Acts 90–570. The result urged by the Trustee would undercut the legislative intent, which was clearly articulated by the Alabama legislature in 1990 when it passed enabling legislation for the PACT accounts. *Id.*

■ Examination of the contract provisions regarding cancellation and termi-

nation shows that these powers do not convert property rights which would otherwise be property of the children into property of the parents. That is to say that the *power* to invade the account does not constitute the *right* to do so.[3] The parties stipulated that the Debtors' testimony would be that in opening and funding the PACT Accounts, they intended to make transfers to and provide for the education of their children. Considering the record as a whole, the Court accepts this stipulation and finds that the Debtors intended to provide for their children's education. The purpose of the PACT program is to pay today the college tuition charges a child will incur in the future, thereby discharging the parent's obligation to provide for their child's education, maintenance and support.[4] The program necessarily must have provisions for cancellation and substitution because the future is not certain. A child might die or become disabled, or might decide not to attend college, or might decide to attend a college out of state. It is beyond any reasonable dispute that the purpose of a PACT Account is not to function as an investment or savings account for the purchaser. Money which is placed in a PACT Account does not

---

3. 11 U.S.C. § 541(b)(1) (property of the estate does not include any power that the debtor may exercise solely for the benefit of an entity other than the debtor). Indeed, in Judge Crawley's dissenting opinion in *Johnson v. Taylor,* it is suggested that the child has a cause of action against her father for his invasion of her property rights in the PACT accounts. The dispute between the majority decision and Judge Crawley's dissent is that the majority would permit enforcement of the child's property right by way of a contempt proceeding on a temporary restraining order, while Judge Crawley is of the opinion that the temporary restraining order vanished upon entry of judgment, leaving no order for the father to have disobeyed. Both Judge Crawley and the majority were of the view that the child had a property interest in the PACT

accounts, their disagreement centered on the procedural device available to the child to enforce her rights.

4. This is not to suggest that every parent in every instance has a legal obligation to purchase a PACT contract for each of their children. Rather, the law provides a parent considerable discretion in how he meets his obligations to his children. Once a parent, acting in good faith and without the intent to defraud creditors, elects to fund a PACT contract, the Trustee and the Bankruptcy Court should not be permitted to second guess that decision and attempt to reallocate money properly spent on education for the use and benefit of the creditors.

"grow" in the sense that it does not accrue interest.[5] Further, if a purchaser cancels the contract, the amount of money refunded to him is subject to a cancellation fee of $150.00 and additional administrative fees.[6] Sec. V, para. 5.06.

### C. *In re Darby*

In 1997, this Court handed down a decision finding that PACT accounts were not exempt property, pursuant to Alabama Code Sections 19–3–1 and 27–14–32. *In re Darby*, 212 B.R. 382, 384 (Bankr.M.D.Ala. 1997) (Gordon, J); *see* ALA.CODE §§ 19–3–1 (exemption for express trusts); 27–14–32 (exemption for certain annuity contracts). In *Darby*, the Court did not address the threshold issue of whether the PACT Accounts were property of the estate in the first instance, instead considering only the question of exemption. *Id.* at n. 11. The Court in the case at bar has concluded that the PACT accounts in question are not property of the estate. Therefore, it need not reach the question of whether they are exempt.

 The Court will take issue with the following language from the *Darby* decision. At footnote 11, it is stated that "the debtor concedes that the contracts are estate property by claiming the property as exempt: only estate property is subject to exemption under 11 U.S.C. § 522(b)." This suggests that by making a disclosure on Schedule C, a debtor forfeits his right to make a legal argument that the subject property is not property of the estate under Section 541. This is both incorrect as a matter of law and bad policy.

When a debtor files bankruptcy, he is required to file certain statements and schedules making disclosure of all of his assets and liabilities as well as disclosures of substantial transactions and economic events in his recent past. 11 U.S.C. § 521(1), FED. R. BANKR.P. 1007, 9009. Under the current version of the schedules prescribed by the Judicial Conference, all assets must be disclosed on Schedule B and any claim of exemption is made on Schedule C. Debtors who fail to disclose properly their assets face heavy civil penalties, up to and including a denial of discharge, or even criminal penalties. 11 U.S.C. § 727(a)(4)(A) (discharge may denied for making false oath or account); 18 U.S.C. § 152 (concealment of assets is a felony).

To compound a debtor's dilemma, there is no specific form on which a debtor may disclose a property interest which a debtor believes that a trustee or a creditor may contend is property of the estate, but which the debtor believes is not. The instructions to Schedule B require the debtor to "list all personal property ... of whatever kind," without regard to whether that property would be property of the estate. Then the debtor must find a place to distinguish those assets which are not property of the estate—the only place to do that is Schedule C, where the debtor lists exempt property. The best course of action is to schedule the property and then claim it exempt, thereby making full disclosure and giving notice that the debtor believes that the property is not subject to

---

**5.** The amount refunded in the event the death or disability of a child would be greater than the amount refunded in the event of termination. *See* Doc. 15, Ex. 1, Para. 5.01, 5.02, 5.07.

**6.** "Cancellation. If the Contract is cancelled ... the Purchaser will receive a refund of the

Redemption Value of the Contract, less a Cancellation fee of fifty percent (50%) of the amounts paid into the Trust Fund, excluding Administrative Fees, up to a maximum of $150.00." Doc. 15, Ex. 1, Section V, Para. 5.06; *see* Section VIII, Administrative Fees.

distribution to creditors. Another option may be to make the disclosure in Paragraph 14 of the Statement of Financial Affairs, which calls for a listing of "property held for another." While either of these options may have been an acceptable way to make this disclosure, a debtor should not be penalized for attempting to make a disclosure in good faith.

A Bankruptcy Court in Arkansas faced the problem, and stated as follows:

> Although it may not be technically correct to list the property as exempt since it is not even property of the estate, listing such property as exempt is an error which gives notice to all creditors that the debtors claim that the creditors may not reach that property. It is always better for debtors to err by giving excess information than to fail to disclose information.

*In re Stevens,* 177 B.R. 619, 620 n. 2 (Bankr.E.D.Ark.1995); *In re Avis,* 1996 WL 910911, at *8 n. 9 (Bankr.E.D.Va.1996) (property that is not property of the estate should be listed on Schedule B, noting that there is no place to schedule property which the debtor contends is not property of the estate). To the extent that this Court's decision in *Darby* may be read for the proposition that the act of disclosing property on Schedules B or C constitutes a waiver of the argument that the property in not property of the estate pursuant to Section 541, that proposition is repudiated.

### III. CONCLUSION

The Court finds that the rights under the PACT contracts are property of the Debtors' children and are not property of the Debtors' estate. This conclusion is supported by the plain language of the enabling legislation enacted by the Alabama Legislature in 1990, the plain language of the PACT contracts, as well as Alabama common law doctrine as articulated by the Alabama Court of Civil Appeals in *Johnson v. Taylor.* For these reasons, the Trustee's objection is overruled. The Court will enter a separate order in accordance with FED. R. BANKR.P. 9021.

### Order

For the reasons set forth in the Court's Memorandum Decision of this date, it is

ORDERED that the Trustee's Objection to Debtors' Claim of Exemptions (Doc. 7) is OVERRULED.