**In re Jack Lynn SCHAUER, Debtor.**

**Bankruptcy No. 99–31062.**

United States Bankruptcy Court, D. North Dakota.

Jan. 21, 2000.

Keith Trader, Fargo, ND, for debtor.

Kip M. Kaler, Fargo, ND, for Trustee.

Nancy Morris, Fargo, ND, for Norwest Bank.

### MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the Court is the chapter 7 Trustee's motion for turnover filed on December 8, 1999. Kip M. Kaler, the chapter 7 trustee in this case, seeks turnover of the Debtor's interests in a spendthrift trust created by the Debtor's father, Edmund A. Schauer. Specifically, Kaler seeks turnover of all post-petition trust distributions received by the Debtor as well as the Debtor's right to receive a share of the trust corpus upon his mother's death. Kaler asserts that the foregoing interests are not subject to the spendthrift provision appearing in the indenture of trust, and that, therefore, 11 U.S.C. § 541(c)(2) does not apply to shield them from becoming

part of the bankruptcy estate. Norwest Bank North Dakota, N.A., as trustee of the trust created by Edmund A. Schauer ("Edmund A. Schauer Trust"), responds that the spendthrift provision at issue remains valid at present and effectively prevents any alienation of the Debtor's aforementioned interests in the Edmund A. Schauer Trust. The Debtor joins in the bank's opposition to Kaler's motion for turnover. This matter came on for hearing before the undersigned on January 12, 2000.

### 1.

### *Factual Background*

The following facts are gleaned from the entire record in this case. The Debtor, Jack Lynn Schauer, is one of the children of Ed and Betty Schauer. In 1969, Ed created a trust for the benefit of his wife and children. Significantly, the indenture of trust contains the following anti-alienation provision:

> The right and interest of any beneficiary other than the Donor to receive income or principal hereunder shall not be alienable or anticipated by way of assignment or otherwise, and shall not be subject to interference or attachment by creditors or any other person.

Ed subsequently died in 1974, but Betty is still alive.

The indenture of trust divides the trust corpus into two funds labelled "Trust A" and "Trust B," respectively. Trust A is a marital deduction trust established for the benefit of Ed's wife, Betty. The amount of the corpus of Trust A is defined to be the amount of the maximum marital deduction available under federal estate tax laws at the time of Ed's death. According to the trust indenture, income from Trust A is to be distributed regularly to Betty for her maintenance and upkeep as long as she lives. In addition, the trustee, in its discretion, may distribute principal from Trust A to Betty or for Betty's benefit.

Finally, Trust A is to be ultimately distributed as Betty directs in her will.

Trust B is a residuary trust, containing all the transferred assets that did not become part of Trust A. Like Trust A, income from Trust B is to be distributed to Betty on a regular basis as long as she lives. However, upon Betty's death, Trust B is to be divided into equal shares for each of the Schauer children-Thomas Schauer, Jane Albrecht, Patricia Arndt, and the Debtor. The indenture of trust also provides that *after Betty dies,* each of the children, upon reaching age 35, has the right to compel a distribution of his or her entire share of Trust B. The Debtor and all his siblings are over age 35, and it is estimated that his distribution from Trust B would be approximately $125,000 upon Betty's death.

In addition, the trustee is allowed to make distributions of principal to the Schauer children out of Trust B if the trustee, in its discretion, feels that the distribution is warranted and would not jeopardize Betty's financial well-being.[1] As the Debtor is permanently and totally disabled, the trustee has been making discretionary distributions to the Debtor for quite some time, thereby reducing the corpus of Trust B, which in turn reduces the size of the share each of the children will receive after Betty dies.

In 1995, the Schauer children, Betty, Norwest Bank (as trustee of the Edmund A. Schauer Trust and as conservator of Betty's estate), and Marilyn Hawkinson (as guardian of the person of Betty) entered an agreement called the Edmund A. Schauer Family Agreement. Under the terms of the agreement, the Debtor is to receive $6,000 per year in trust disbursements for his maintenance and upkeep. In addition, the agreement acknowledges certain amounts that each child has received from Betty and from the trust. Upon Betty's death, the agreement provides for a set-off of those amounts and any future

---

1. The trustee may also tap into the principal of Trust B for the continued care and maintenance of Betty in the event that Trust A is exhausted.

amounts similarly received against each child's (1) inheritance from Betty individually by the terms of her will, (2) distribution from Trust A if Betty's will fails to fully dispose of that fund, or (3) distributive share of Trust B that each child shall be entitled to receive after Betty dies. Finally, the agreement provides that the Debtor's inheritance from Betty as well as his distributive share of Trust B upon Betty's death shall be held and administered by Norwest Bank in an irrevocable inter vivos trust substantially similar to the Edmund A. Schauer Trust. By the order dated November 6, 1995, the Edmund A. Schauer Family Agreement was judicially approved by the District Court for Cass County, State of North Dakota.

On June 16, 1997, the Debtor entered an "irrevocable inter vivos trust agreement" with Norwest Bank in an effort to comply with the Family Agreement. On June 21, 1999, the Debtor filed a chapter 7 petition in bankruptcy. On Schedule B, the Debtor listed a "Residuary Trust" with an unknown value. On Schedule I, the Debtor listed income of $500 per month from the "Residuary Trust." On December 8, 1999, Kaler filed the present motion for turnover of the Debtor's interests in the Edmund A. Schauer Trust, seeking to recover for the bankruptcy estate all trust monies distributed to the Debtor post-petition.[2] In addition, Kaler seeks turnover of the Debtor's future interest in receiving a distributive share of the corpus of Trust B after Betty dies.

### 2.

### *The Monthly $500 Trust Distributions to the Debtor*

 Kaler requests turnover of all the monthly $500 trust distributions the Debtor has received since the petition was filed in this case as well as those which the Debtor continues to receive. Generally, upon distribution, funds received by a debtor from a spendthrift trust are no longer subject to the anti-alienation clause of that trust. *First Northwestern Trust Co. of South Dakota v. Internal Revenue Service*, 622 F.2d 387, 391 (8th Cir.1980). However, since none of these post-petition distributions existed at the time the petition was filed, the broad provisions of section 541(a)(1) of the Bankruptcy Code do not apply. Instead, these monthly post-petition distributions may only be brought into the bankruptcy estate by operation of section 541(a)(5) of the Bankruptcy Code, which provides the following:

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(5). Thus, only those trust distributions made within the first 180 days post-petition may be brought into the bankruptcy estate under section 541(a)(5). Furthermore, since subsections (B) and (C) of 11 U.S.C. § 541(a)(5) are not applicable here, those distributions that occurred within the 180–day post-petition period will be deemed part of the bankruptcy estate only if they were acquired by bequest, devise, or inheritance pursuant to 11 U.S.C. § 541(a)(5)(A). *See Drewes v. Schonteich*, 31 F.3d 674, 676 n. 5 (8th Cir.1994).

 A bequest is a gift by will of personal property. *Newman v. Magill*, 99 B.R. 881, 884 (C.D.Ill.1989). A devise is a testamentary disposition of land or realty. *Id.* Inheritance is property which descends to an heir on the intestate death of another. *Id.* Generally, North Dakota law uses

---

**2.** At the hearing in this matter, Kaler apparently conceded that the Debtor's monthly $500 trust distributions are not property of the bankruptcy estate. Nevertheless, the Court will address this issue as it is properly raised in Kaler's motion.

the terms "bequest," "devise," and "inheritance" in conformity with the foregoing definitions. *See Hoellinger v. Molzhon,* 77 N.D. 108, 41 N.W.2d 217, 222 (1950) ("devise" and "bequest"), *Lutz v. Schneider (In the Matter of the Estate of Lutz),* 563 N.W.2d 90, 102 (N.D.1997) ("inherit"). Whether post-petition trust distributions satisfy the preceding definitions and qualify for inclusion in the bankruptcy estate under § 541(a)(5)(A) depends on the nature of the trust at issue. *See Newman v. Magill,* 99 B.R. 881 (C.D.Ill.1989), *aff'd sub nom. In re Newman,* 903 F.2d 1150 (7th Cir.1990); *Gordon C. York, Inc. v. Kragness (In re Kragness),* 58 B.R. 939 (Bankr. D.Or.1986). "[A] testamentary trust is itself a testamentary disposition," and "a bequest encompasses testamentary gifts of income from a trust." *Kragness,* 58 B.R. at 944. Therefore, post-petition distributions from a testamentary trust are included in the bankruptcy estate pursuant to § 541(a)(5)(A). *Id.* However, distributions from an inter vivos trust do not qualify as bequests, and § 541(a)(5)(A) does not operate to bring such distributions into the bankruptcy estate. *Newman,* 99 B.R. at 884–85; *In re Newman,* 903 F.2d at 1153–54.

In the case at bar, the monthly trust distributions received by the Debtor constituted neither devises nor inheritance because they did not involve land or realty and did not arise from intestate succession. Moreover, since the Edmund A. Schauer Trust was not created by will and is not a testamentary trust, the monthly post-petition distributions received by the Debtor cannot be characterized as bequests. Therefore, the trust distributions received by the Debtor during the 180–day post-petition period do not fall within the ambit of 11 U.S.C. § 541(a)(5)(A) and are excluded from the bankruptcy estate.

### 3.
### *The Debtor's Future Interest in the Trust Corpus*

Kaler also seeks turnover of the Debtor's future interest in receiving a distributive share of the corpus of Trust B after Betty dies. While Kaler is correct in asserting that the Debtor will have a right to a share of the corpus at some point in the future, that day has not yet arrived. Except for the monthly distributions of $500, the Debtor has no present interest in the corpus of the trust and will have none until his mother's death. Although Kaler characterizes the Debtor's future interest as an absolute vested right to distribution, such a characterization has little relevance to the issue before the Court. *See Newman v. Magill,* 99 B.R. 881, 883 (C.D.Ill. 1989); *Geekie v. Watson (In re Watson),* 65 B.R. 9, 11–12 (Bankr.C.D.Ill.1986) (quoting *Samore v. Graham (In re Graham),* 726 F.2d 1268, 1271 (8th Cir.1984)). The question to be determined is whether the Debtor's future interest in receiving a share of the trust corpus has become an asset of his bankruptcy estate under section 541 of the Bankruptcy Code, and particularly in light of section 541(c)(2).

"A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Thus, "a debtor's interest in a trust is excluded from the [bankruptcy] estate if it is restricted from transfer under applicable nonbankruptcy law." *Drewes v. Schonteich,* 31 F.3d 674, 676 (8th Cir.1994). North Dakota law generally recognizes the validity of spendthrift trust provisions. *See Brownell v. Leutz,* 149 F.Supp. 98, 103 n. 7 (D.N.D.1957).

A debtor's future interest in receiving a distribution of the corpus of a spendthrift trust is excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) where the applicable spendthrift provision in the trust restricts alienation of that future interest. *See Newman v. Magill,* 99 B.R. 881 (C.D.Ill.1989), *aff'd sub nom. In re Newman,* 903 F.2d 1150

(7th Cir.1990); *Spencer v. Blanchard (In re Blanchard),* 201 B.R. 108 (Bankr. E.D.Pa.1996); *Smith v. Baydush (In re Baydush),* 171 B.R. 953 (E.D.Va.1994); *Horsley v. Maher,* 89 B.R. 51 (D.S.D.1988); *In re Cypert,* 68 B.R. 449 (Bankr.N.D.Tex. 1987); *Gordon C. York, Inc. v. Kragness (In re Kragness),* 58 B.R. 939 (Bankr. D.Or.1986); *Myler v. Arney (In re Arney),* 35 B.R. 668 (Bankr.N.D.Ill.1983).

The *Newman* case is directly on point, and its facts are similar to those of the case at bar. In *Newman,* the 45–year–old debtor was the beneficiary of a trust containing the following spendthrift provision:

> Neither the *corpus nor the income* of any trust estate herein created shall be liable for the debts of any beneficiary thereof, nor shall the same be subject to seizure by any creditor of any beneficiary under any writ or proceeding at law or in equity, and no beneficiary shall have the right or power to give, sell, assign, transfer, pledge, mortgage, or in any other manner dispose of, encumber, *or anticipate his or her interest* in the *income or corpus* of any trust estate ...

*Newman,* 99 B.R. at 882–83 (italics in original; underline added). In addition, the trust was to terminate when the debtor reached 50 years of age, and the trust corpus was to be distributed to him at that time. *Id.* at 883. In *Newman,* the district court held that the foregoing spendthrift provision applied equally to both the corpus and the income of the trust, and that the debtor's interest in receiving a distribution of the corpus upon termination of the trust was excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2). *Id.* at 883–84. On appeal, the chapter 7 trustee asserted that since the trust terminated on the debtor's 50th birthday, the debtor's distribution of the corpus would be free from the restrictions in the trust's spendthrift provision. *In re Newman,* 903 F.2d at 1152. On that basis, the chapter 7 trustee argued that the present value of the debtor's future interest in receiving the corpus of the trust should be included

in the bankruptcy estate. *Id.* at 1152–53. The Seventh Circuit affirmed the district court, stating, "[t]he point of a spendthrift trust, however, is to prevent exactly this sort of *anticipation* by beneficiaries and their creditors." *Id.* at 1153 (italics added).

■ In the present case, the spendthrift provision at issue contains similar language to the spendthrift provision in *Newman,* and a similar result obtains. The anti-alienation provision in the Edmund A. Schauer Trust states that the "interest of any beneficiary ... to receive income or principal hereunder shall not be alienable or anticipated by way of assignment or otherwise, and shall not be subject to interference" by any person. Thus, the provision expressly encompasses both income and corpus distributions, and its use of the word "anticipated" contemplates the Debtor's future interest to receive such distributions as well. This interpretation of the spendthrift provision is consistent with the settlor's intent to prohibit alienation of the Debtor's interests under the trust and comports with the Court's duty to ascertain and implement that intent. *See Hecker v. Stark County Social Service Board,* 527 N.W.2d 226 (N.D.1994) (stating that a court's primary objective when construing a trust instrument is to ascertain and implement the settlor's intent). A holding in favor of Kaler on this issue would not only frustrate the intent of the settlor as expressed in the spendthrift provision but may well render section 541(c)(2) of the Bankruptcy Code a nullity. *See Cypert,* 68 B.R. at 451. Therefore, the Court concludes that the language of the spendthrift provision in the Edmund A. Schauer Trust effectively prohibits alienation of the Debtor's future interest in receiving a distribution of trust corpus upon Betty's death. Furthermore, there is no indication that the spendthrift provision at issue is unenforceable under North Dakota law. Accordingly, the foregoing interest of the Debtor is excluded from the

bankruptcy estate by operation of 11 U.S.C. § 541(c)(2).

### 4.

Based on the foregoing, Kaler's motion for turnover is hereby DENIED in all respects.

*SO ORDERED.*