In the Matter of Beatrice Inglis **DORSEY, Milton Steven Dorsey, Debtors.**

**Griffin E. Howell, III, Chapter 7 Trustee for the Estate of Beatrice Inglis Dorsey and Milton Steven Dorsey, Plaintiff,**

v.

**Bank of America, N.A. as Trustee of the Edwin W. Inglis GST Exempt Trust for the Benefit of Beatrice Dorsey, Defendant.**

**Bankruptcy No. 11–13292–WHD. Adversary No. 13–1005.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

June 18, 2013.

378

John A. Christy, Kelly L. Walsh, Schreeder, Wheeler & Flint, LLP, Atlanta, GA, for Plaintiff.

Byron Crane Starcher, Nelson Mullins Riley & Scarborough, LLP, Atlanta, GA, for Defendant.

---

1. Rule 12(b)(6) is made applicable to this adversary case by its incorporation into Federal Rule of Bankruptcy Procedure 7012. *See* FED. R. BANKR.P. 7012.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

The above styled adversary case comes before the Court on a *Motion to Dismiss Amended Complaint* (hereinafter the "Motion") filed by Bank of America (hereinafter the "Defendant"), requesting the Court to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] the *Amended Complaint for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542* filed by Griffin E. Howell, III (hereinafter the "Plaintiff"), in his role as Chapter 7 Trustee of the bankruptcy estate of Beatrice and Milton Dorsey (hereinafter individually and jointly the "Debtor(s)"). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (E); § 1334.

### Procedural History and Statement of Facts.

On October 3, 2011, the Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code[2] (hereinafter the "Code") in the Northern District of Georgia, Newnan Division. The case was subsequently converted to Chapter 7 on November 15, 2011, and Griffin Howell, III was appointed as the Chapter 7 Trustee.

On November 14, 2011, the Debtors filed their Statement of Financial Affairs and related schedules (hereinafter collectively the "Schedules"). The Schedules disclosed an interest in a trust, referred to as the Edwin W. Inglis Trust (hereinafter the "Trust"). *See* Debtors' Schedule B. (Bankr.Docket No. 13). The Trust interest was valued at $0.00 and no exemption was claimed in the property. *See* Debtors'

---

2. 11 U.S.C. § 101 *et. seq.*

Schedules B. & C. (Bankr.Docket No. 13). The Schedules were later amended to reflect the complete name [3] of the Trust and to indicate that the Trust was a spendthrift trust with an expected distribution of $15,800 to the Debtors within 180 days of the filing of the petition. *See* Debtors' Amended Schedules B. & C. (Bankr.Docket No. 37). No exemptions were claimed in the Trust's property by these amendments. *See id.*

On February 1, 2012, the Plaintiff filed an objection to Debtors' exemptions, objecting to, among other items, "any attempt to exempt Debtor Wife's interest in the Edwin W. Inglis Trust." *See* Trustee's Objection to Debtors' Exemptions (Bankr.Docket No. 22). These objections were served only upon the Debtors, their attorney, and the United States Trustee.

Prior to a hearing on the matter, the Trustee and the Debtors reached a consent agreement, whereby, the Trustee's objection was sustained to the "extent necessary to pay all creditors and administrative expenses in the case and the exemption [was] disallowed to that extent." This agreement was memorialized by consent order entered on August 23, 2012 (hereinafter the "Exemption Order"). *See* Ct.'s Order on Trustee's Objection to Debtors' Exemptions (Bankr.Docket No. 40). The Plaintiff estimates that the amount necessary to satisfy all creditors and administrative expenses is $68,193.00.

On January 28, 2013, the Plaintiff commenced the instant proceeding by filing a complaint (hereinafter the "Complaint") pursuant to Section 542 of the Code against Merrill Lynch Trust Company and Matthew Fountain, an employee of the Merrill Lynch Trust Company, as trustee of the Trust. *See* Pl.'s Compl. (Adv. Dock-

et No. 1). The Defendant answered the Complaint and subsequently filed a Motion to Dismiss Complaint. *See* Def.'s Answer to Pl.'s Compl. (Adv. Docket No. 5); *See also* Def.'s Mot. to Dismiss (Adv. Docket. No. 8). Before the Court could address the merits of the Defendant's Motion, the parties filed a joint motion requesting the Court's permission for the Plaintiff to amend the Complaint to reflect the proper parties. *See* Joint Motion to Amend (Adv. Docket No. 12). After the filing of the joint motion and upon leave of the Court, the Plaintiff's Complaint was amended (hereinafter the "Amended Complaint") to drop the original defendants and insert Bank of America as the proper Defendant in this action. *See* Pl.'s Am. Compl. (Adv. Docket No. 14). The Amended Complaint, as did the initial Complaint before it, petitioned the Court for a judgment:

> (i) affirming the interest of the Debtors in the funds in the Trust, (ii) ordering the immediate turnover to Plaintiff of the funds in the Trust to the extent necessary to pay all creditors and administrative expenses in this case, and (iii) for such other and further relief as is necessary and appropriate.

Pl.'s Am. Compl.(Adv. Docket No. 14); *See also* Pl.'s Compl. (Adv. Docket No. 1). The Amended Complaint also sought reimbursement of attorney's fees associated with this adversary proceeding pursuant to the Official Code of Georgia Annotated (hereinafter O.C.G.A.) § 13–6–11. *See* Pl.'s Am. Compl. (Adv. Docket No. 14).

The Defendant's original Motion to Dismiss Complaint was withdrawn and replaced by the Defendant's Motion to Dismiss Amended Complaint and Brief in Support on May 24, 2013. *See* Def.'s Mot.

---

**3.** The complete name of the Trust is the Edwin W. Inglis Amended and Restated Revocable Trust Agreement dated 5/11/1998.

to Dismiss Am. Compl. (Adv. Docket No. 17); *see also* Def.'s Br. (Adv. Docket No. 18). Accompanying the Defendant's Brief was a copy of the Edwin W. Inglis Amended and Restated Revocable Trust Agreement, dated May 11, 1998, as amended February 21, 2006 (hereinafter the "Trust Agreement"). *See* Def.'s Br., Ex. A.

### Threshold Questions.

#### A. Procedural Posture.

Before the Court may address the substance of the Defendant's Motion to Dismiss, it must first determine whether the procedural posture of the case is such that entertainment of the substantive issues is proper.

A motion to dismiss for failure to state a claim is governed by Federal Rule of Civil Procedure (hereinafter "Rule(s)") 12, as incorporated into the Bankruptcy Code by Federal Rule of Bankruptcy Procedure 7012. *See* FED. R. BANKR.P. 7012; *See also* FED.R.CIV.P. 12. Rule 12(b) states that a "motion asserting" the defense of failure to state a claim upon which relief can be granted "must be made before" the first responsive pleading if one "is allowed." *See* FED.R.CIV.P. 12(b).

■ Nevertheless, where "new matter" is pled giving rise to a Rule 12 defense, leave to file an amended complaint may "revive[ ] the defendant's right to interject a motion on those grounds." *See Overton v. Wyeth, Inc.*, 2011 WL 1343392, *3 (S.D.Ala.2011) (citations omitted). This "new matter" must give rise to a defense that did not exist prior to the amendment in order to revive a party's right to bring a Rule 12(b)(6) motion. *Id.* (citing *In re Morrison*, 421 B.R. 381, 386 (Bankr. S.D.Tex.2009); *Artistic Stone Crafters,*

*Inc. v. Safeco Ins. Co. of Am.*, 2010 WL 317472, *3 (S.D.Ga.2010) ("[W]hen parties are granted leave to amend their pleadings ... and the amendment adds a new matter that gives rise to a new, previously inapplicable Rule 12 motion, the responding party may assert the new Rule 12 defense by motion or responsive pleading"); *Limbright v. Hofmeister*, 2010 WL 1740905, *2 (E.D.Ky.2010) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading.")).

■ Defendant's first pleading to the original Complaint was an Answer on March 13, 2013, followed thereafter by the original Motion to Dismiss, dated May 14, 2013. The Complaint was amended to insert Bank of America as the proper party, and Defendant's first responsive pleading to the Amended Complaint was the instant motion before the Court. However, for all intents and purposes, the Amended Complaint accomplished nothing more than correcting the official parties [4] and created no "new matter" giving rise to a previously inapplicable Rule 12 motion. This is evident by the fact that the Defendant filed an identical Rule 12(b)(6) motion and brief prior to the Plaintiff's amending the Complaint. *See* Def.'s Mot. to Dismiss (Adv. Docket No. 8), filed May 14, 2013; *see also*, Pl.'s Amended Complaint (Adv. Docket No. 14), dated May 21, 2013. It appears, therefore, that the ability to move the Court pursuant to Rule 12(b)(6) was not revived.

■ However, a Rule 12(b)(6) "defense" cannot be waived by failing to make a proper motion under the Rules. *See* FED.

---

**4.** Ordinarily the replacement of a party would seem to provide a new party justification for not properly moving the Court under Rule 12(b)(6), but in this case, the original defendant, Merrill Lynch Trust Company, is a division of the Defendant, and the Defendant answered the original Complaint on behalf of the original defendants.

R.Civ.P. 12(h)(1) ("A party waives any defense listed in Rule 12(b)(2)-(5) by: (B) failing to either (i) make it by motion under this rule; or include it in a responsive pleading...."); *see also* Fed.R.Civ.P. 12(h)(2) ("Failure to state a claim upon which relief can be granted ... may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."). Moreover, the Rule directs that it can be raised in a Rule 12(c) motion. *Id.*

■ Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Additionally, "a motion under Rule 12(c) is substantively the same as a motion under 12(b)(6) ..., [except] Rule 12(c) motions may be made after[ ] [responsive pleadings are filed.]" *Cochran v. Five Points Temporaries, LLC,* 2012 WL 5492597, *1 n. 2 (N.D.Ala.2012).

■ Therefore, for the reasons stated above, the Court will address Defendant's Motion to Dismiss for failure to state a claim pursuant to Rule 12(c)[5]. However, though the distinction is procedurally material to this Court, it is substantively immaterial, as the standards of Rule 12(b)(6) likewise apply to Rule 12(c) motions to dismiss. *See Vaughn v. Georgia,* 2012 WL 2458538, *1 (N.D.Ga.2012).

*B. Incorporation by Reference Doctrine.*

■ Accompanying the Defendant's Motion and Brief was a copy of the Trust Agreement in question. *See* Def.'s Br., Ex. A. (Adv. Docket No. 18). Ordinarily, the attachment of evidence or other documents to the pleadings would require the Court to examine this motion under summary judgment standards, in accordance with Rule 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.

Fed.R.Civ.P. 12(d). Despite the language of Rule 12(d), the Eleventh Circuit has adopted the "incorporated by reference doctrine." *See Day v. Taylor,* 400 F.3d 1272, 1274 (11th Cir.2005); *see also Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir.2002). Under this doctrine, a court may consider a document attached to a motion to dismiss[6] without converting the motion into a summary judgment motion, but only if the document in question "is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley,* 304 F.3d at 1134. "Undisputed," in this context means that the "authenticity of the document is not challenged." *Id.*

■ In this case, the Plaintiff's claim is ultimately dependent on whether the Trust Agreement creates enforceable spendthrift protection of the Trust's *res* and income. Therefore, the Trust document is central to the Plaintiff's claim and to this adversary proceeding in general. Moreover, the Plaintiff does not seem to dispute the authenticity of the attached document.[7]

---

**5.** Because the Defendant has not technically answered the Amended Complaint, a case could be made that the pleadings are not officially closed. However, as the procedural posture seemingly forbids the Motion to be brought under Rule 12(b)(6) at this time, and because the reasoning for such a forbiddance is the Defendant's Answer to the original Complaint, the Court will consider the pleadings closed for the purposes of this Motion.

**6.** The Eleventh Circuit has also determined that because Rule 12(b)(6) and Rule 12(c) "serve the same purpose," the "incorporation by reference doctrine" applies to Rule 12(c) cases. *Horsley,* 304 F.3d at 1134.

**7.** The Plaintiff believes that the Motion in general is premature because, without discovery, it is unclear whether there is a more recent version of the Trust Agreement, but

The Court, therefore, finds that the Motion satisfies the elements of the "incorporation by reference doctrine" and does not require further conversion into one for summary judgment.

### Conclusions of Law.

*A. Rule 12(c) Standard.*

The standards used in a Rule 12(c) motion are the same used in the context of a Rule 12(b)(6). *Vaughn v. Georgia,* 2012 WL 2458538, *1 (N.D.Ga.2012) (citing *Roma Outdoor Creations, Inc. v. City of Cumming, Ga.,* 558 F.Supp.2d 1283, 1284 (N.D.Ga.2008)); *see also Horton v. HSBC Bank,* 2013 WL 2452273, *5 (N.D.Ga.2013). Rule 8 provides that a pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED.R.CIV.P. 8(a)(2), and Rule 12(b)(6) explains that dismissal of a proceeding is only proper where that short and plain statement fails "to state a claim upon which relief can be granted." FED. R.CIV.P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations set forth in the Plaintiff's Amended Complaint [8] and draw all reasonable inferences in the light most favorable to the non-moving party. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir.2003); *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n. 1 (11th Cir.1999). However, the Court is authorized to reject a Plaintiff's legal conclusions, labels, and unsupportable assertions of fact. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

The Supreme Court recently imbued 12(b)(6) motions with a plausibility standard, holding that the Court must dismiss a case where the well pled facts do not state a claim that is plausible on its face. *See Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the Complaint need not be fully developed but "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

█ Where a bankruptcy trustee seeks to recover property under Section 542 of the Code, the Plaintiff must show that the property to be recovered is property of the estate. *See Bracewell v. Kelley,* 454 F.3d 1234, 1243 (11th Cir.2006) ("§ 542 authorizes turnover of property in another's possession only if it is property of the estate."); *Hechinger Inv. Co. of Del. v. Allfirst Bank,* 282 B.R. 149, 161 (Bankr. D.Del.2002). If the Plaintiff cannot make out a case sufficiently plausible to support its claims, the adversary proceeding should be dismissed. *See Hechinger Inv. Co. of Del.,* 282 B.R. at 161.

---

does not dispute the actual authenticity of the attached document. *See Pl.'s Resp. to Mot.* 14–15.

**8.** As discussed previously, the "incorporation by reference doctrine" authorizes the Court to consider the Trust Agreement, as it is central to the adversary proceeding and its authentic-

ity is unchallenged. *See Brawley v. Shoals Hosp.,* 2013 WL 541309, *1 (N.D.Ala.2013) (citing *SFM Holdings, Ltd. v. Banc of Amer. Securities, LLC,* 600 F.3d 1334, 1337 (11th Cir.2010); *Day v. Taylor,* 400 F.3d 1272, 1275–76 (11th Cir.2005); *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir.2002)).

## B. Property of the Estate.

Section 542 of the Code holds that "an entity ... in possession, custody, or control ... of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property...." 11 U.S.C. § 542. The property identified in Section 363 is labeled by that provision as "property of the estate." 11 U.S.C. § 363(b). Section 541 incorporates into property of the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

■ However, the Code creates an exception where "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). This provision acts to exclude any beneficial interest protected by any relevant nonbankruptcy law from becoming property of the estate. *See Patterson v. Shumate,* 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Therefore, the question becomes—are the restrictions on the beneficial interests of the Debtor in the Trust *enforceable* under applicable nonbankruptcy law? [9]

## C. The Exemption Order.

The Plaintiff implores the Court to recognize that the central issue, whether the Debtors' interest in the Trust is property of the estate, has already been adjudicated by the Exemption Order. *See* Pl.'s Br. 8. In the Exemption Order, the parties consented and the Court sustained the Plaintiff's objection to any exemption in the Trust "to the extent necessary to pay all creditors and administrative expenses."

*See* Ct.'s Order on Trustee's Objection to Debtors' Exemptions (Bankr.Docket No. 40). The Plaintiff believes that the Exemption Order implicitly requires a determination that any interest in the Trust is property of the estate, and thus, the doctrine of collateral estoppel should preclude the Defendant from raising that issue now. *See* Pl.'s Br. 8.

■ The Court disagrees and believes that the Exemption Order stood for nothing more than the proposition that if any of the Trust is property of the estate, any exemption would be denied, but only to the extent necessary to pay claims and expenses in this case.

■ First, the Exemption Order is not inconsistent with a finding that the property identified in the order is not property of the estate. To be subject to exemption, property must first be property of the estate. *See In re Price,* 2006 WL 6589883, *1 n. 3 (Bankr.N.D.Ga.2006) (Diehl, B.J.). It stands to reason then that the Court cannot grant an exemption upon property that is not estate property. The Order merely states that the Debtor cannot claim an exemption in the property, which proves accurate if either (1) a claimed exemption is contrary to bankruptcy law or (2) the property in question is not property of the estate. Collateral estoppel bars relitigation of determinations necessary to the ultimate outcome of the prior proceeding. *See Bobby v. Bies,* 556 U.S. 825, 129 S.Ct. 2145, 173 L.Ed.2d 1173 (2009). Because the denial of an exemption is consistent with either conclusion— whether the Debtor's interest in the Trust is or is not property of the estate—such a determination was not necessary to the Court's previous pronouncement, and the

---

**9.** Nonbankruptcy law has been identified as both state and nonbankruptcy federal law.

*See Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

Defendant is not precluded from raising the issue at this juncture.

 Moreover, disclosing property in the Schedules does not waive the argument that property is not property of the estate. *See In re Cheatham,* 309 B.R. 631, 638 (Bankr.M.D.Ala.2004); *In re Stevens,* 177 B.R. 619, 621 (Bankr.E.D.Ark.1995). In fact, the Code requires full disclosure of property, some of which may not be property of the estate, for "[t]he concept of 'property of the estate' is a fact-based legal conclusion to be decide by the court after the facts are reviewed by interested parties." *See In re JZ L.L.C.,* 371 B.R. 412 (9th Cir. BAP 2007). As discussed, the Court's order did not make such a determination. But even if the Exemption Order inherently incorporated this finding, it would not have been made on notice to all interested parties. Bank of America, as trustee of the Trust, is irrefutably an interested party to such a determination, yet the certificate of service associated with the Plaintiff's Motion to Disallow Exemptions and the distribution list associated with the Exemption Order both neglected to include the Defendant as a party to be served. *See* Mot. to Disallow Exemption (Bankr.Docket No. 22); Ct.'s Order on Trustee's Objection to Exemptions (Bankr.Docket No. 40).

For these reasons, the Court does not believe that the Exemption Order carried with it a determination as to whether the Debtors' interests in the Trust are estate property.

### D. Spendthrift Analysis.

 The Trust was established in Maryland, administered in Maryland, and provides that "[a]ll questions pertaining to the validity and construction of the Agreement shall be determined ... under Maryland law." *See* Def.'s Br., Ex. A, § XIV. Under Georgia law, the validity and meaning of trusts are determined according to the law of the jurisdiction specified in the trust, unless doing so acts against public policy. *See* O.C.G.A. §§ 53–12–4, –5. Georgia law also recognizes the general validity of spendthrift trusts, *see* O.C.G.A. §§ 53–12–80, 81, so the Court finds no reason, in public policy or otherwise, to interpret this agreement under the law of any state but Maryland.

Maryland first recognized the validity of anti-alienation clauses and established the concept of the spendthrift trust in the case of *Smith v. Towers,* 69 Md. 77, 14 A. 497 (1888). *Smith* established the right of a settlor to protect the income of trust property from the creditors of a trust's beneficiaries. *Id.* at 90–91, 14 A. 497. Maryland subsequently extended this protection to the corpus of a trust, and continues to recognize the validity of such anti-alienation clauses today. *See Medwedeff v. Fisher,* 179 Md. 192, 197, 17 A.2d 141 (1941); *see also Brent v. Maryland Cent. Collection Unit,* 311 Md. 626, 631, 537 A.2d 227 (1988).

There is no single method for the creation of a spendthrift trust. Generally, Maryland courts have held that diverse terminology can place the *res* and income of trust property beyond the reach of creditors and have specifically held that a valid spendthrift trust was created where the settlor used the following language: (1) requiring all payments to be made to the beneficiary and no one else; (2) prohibiting payments from being anticipated or assigned; or (3) prohibiting the attachment or garnishment of trust payments. *See Hoffman Chevrolet, Inc. v. Washington Cnty. Nat. Sav. Bank,* 297 Md. 691, 704, 467 A.2d 758 (1983); *Medwedeff v. Fisher,* 179 Md. 192, 195, 17 A.2d 141 (1941); *Bauernschmidt v. Safe Deposit & Trust Co.,* 176 Md. 351, 353–54, 4 A.2d 712 (1939); *Mahan v. Mahan,* 320 Md. 262,

266, 577 A.2d 70 (Md.App.1990); *Rosenberg v. Rosenberg,* 64 Md.App. 487, 518, 497 A.2d 485 (1985).

Section IX of the Trust document sets out the duties of the trustee(s) and directs the trustee

> To make all payments of income and principal directly to the beneficiary entitled to them and not any other person. A deposit of funds to the beneficiary's account in a bank or other financial institution is the equivalent of direct payment to the beneficiary. No payment may be assigned, anticipated, lent to, borrowed by, or encumbered by the beneficiary; nor may any payment be attached, garnished, or executed upon by any creditor of the beneficiary (hereinafter the "Spendthrift Provision").

Def.'s Br., Ex. A, § IX. This provision contains not just some, but rather, all of the language generally deemed sufficient in establishing a valid spendthrift trust. However, the question before the Court is not whether the provision itself meets the requirements under Maryland law, but whether it is "enforceable" under Maryland law. *See* 541(c)(2).

██ It is well recognized that a settlor's intent "cannot prevail over recognized legal principles and the spendthrift provision must be valid in the eyes of the law." *Brent v. Maryland Cent. Collection Unit,* 311 Md. 626, 632, 537 A.2d 227 (1988). Moreover, the Spendthrift Provision cannot be read in isolation as to the remainder of the document. To that effect, the Court also contemplates the Trust's provisions outlining the beneficiary's right to principal and income:

> In addition [to the annual or more frequent mandatory income distribution], the Trust Beneficiary shall have the noncumulative right in each calendar year, by written notice(s) to the Trustee, to withdraw from the principal of the

Trust Beneficiary's separate trust the greater of: (1) five thousand dollars ($5,000.00); or (2) five percent (5%) of the value of the Trust Beneficiary's separate trust as of the end of the calendar year. The Trust Beneficiary's right to withdraw assets from his or her separate trust shall only be exercisable during the last month of the calendar year. Upon an exercise of this right, the Trustee shall determine the value of the trust assets as of the end of the calendar year, if necessary, and make the requested distribution no later than January 31st of the calendar year following the year of the exercise (hereinafter the "Voluntary Withdrawal Provision").

Def.'s Br., Ex. A, § V(A)(2). Additionally, the settlor made it clear that the provisions of the Trust were to be "construed liberally ... even though the Trustees shall thereby exhaust the entire trust principal." *Id.* § VI.

The inclusion of the Voluntary Withdrawal Provision causes this case to resemble that of *Brent.* In *Brent,* the trust agreement incorporated a spendthrift clause almost identical to the one included in the Trust. *See Brent,* 311 Md. at 629–630, 537 A.2d 227. Additionally, upon reaching the age of 40, the trust granted the beneficiary an absolute right to request in writing and direct the trustee to deliver "the whole or any portion of his or her respective share thereof remaining in the hands of the trustee...." *Id.* at 629, 537 A.2d 227. The court realized that a determination as to whether this clause invalidated the spendthrift protection of the trust was one of first impression in Maryland, *see id.* at 632, 537 A.2d 227, and thus formulated its conclusions around consideration of treatises and other persuasive authority. *Id.*

The *Brent* Court found both the Restatement (Second) of Trusts (1959) (here-

inafter the "Restatement") and A. Scott's treatise, Scott on Trusts, particularly persuasive. A. Scott's treatise states:

> It has been held that where by the terms of the trust a beneficiary is entitled at some future time to receive the principal of the trust estate and that time has arrived but the trustee has not yet paid the principal to him, a restraint on the alienation of his interests ... ceases to be effective.

*Id.* at 633, 537 A.2d 227 (citing A. Scott & W. Fratcher, *Scott on Trusts* § 153 at 133 (4th ed. 1987)). The Restatement essentially concurs. *See* Restatement (Second) of Trusts § 153(2) ("If the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid."). After examining "a fair sampling" of cases from other jurisdictions, *Brent* found emblematic that it is "contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his creditors." *Brent,* 311 Md. at 633, 537 A.2d 227 (quoting *Ullman v. Cameron,* 186 N.Y. 339, 78 N.E. 1074 (1906)).

 "The key is the right of the beneficiary to the corpus as distinguished from the actual possession." *Brent,* 311 Md. at 634, 537 A.2d 227. Whereupon a beneficiary "can call for the principal at will, there is in substance, no condition precedent, and the beneficiary is considered at this point to be the sole owner of the corpus." *Id.* at 635, 537 A.2d 227. Moreover, if "the beneficiary has the absolute right to receive the corpus, the fact that he did not choose to exercise the power is wholly immaterial." *Id.* (internal quotations omitted).

 In this case the beneficiary was required to do nothing more than make a written demand, and the trustee was required to disburse the greater of $5,000 or five percent (5%). The fact that the disbursement is subject to the beneficiary's making a written demand is of no consequence.

> "Property may be given on trust for a person subject to a condition precedent which is entirely dependent on his own will. Thus the trustee may be directed to hold the property until the beneficiary demands it. Such a condition is quite illusory. It is really no condition at all. . . ."

*Id.* at 639, 537 A.2d 227.

 Potentially, there is one significant distinction between this case and *Brent.* In *Brent,* the beneficiary had the right at anytime to the entirety of the trust's corpus. *See id.* at 629, 537 A.2d 227. In the present case, the demand was limited annually to $5,000 or 5%, whichever was greater, and could not be made at anytime, but required a written demand be submitted in December of each calendar year that such a request was made. *See* Def.'s Br., Ex. A., § V(A)(2). Where spendthrift protection is invalid, because of a debtor's entitlement to have the principal conveyed to him upon demand, a "bankruptcy estate is entitled to take a debtor's interest in that portion, of a trust, spendthrift or otherwise, that the debtor has an absolute right to receive." *See Lunkes v. Gecker,* 427 B.R. 425, 431 (N.D.Ill.2010). The question thus arises—what is the "portion" that the Debtors had the right to receive? Since the Debtor is forbidden a cumulative distribution, is it only the portion that the Debtor was entitled to demand in a single year? Or to the contrary, because each year since the Trust came into being, the greater of $5,000 or 5% of the Trust was annually unprotected by the Spendthrift Provision and subject to attachment by the beneficiary's creditors, is

the portion an aggregate amount for each of the years that the Trust existed?

 The Court believes that the most consistent interpretation is that the unprotected portion of the trust is the aggregate of the annual voluntary withdrawals.[10] This interpretation harmonizes itself with the fact that once the beneficiary directly controlled the withdrawal of funds, those funds were immediately reachable by her creditors. *Brent*, 311 Md. at 636, 537 A.2d 227. The fact that the Debtor did not demand a withdrawal should not overcome the fact that the proceeds became unprotected, for "[i]t is enough that the corpus is subject to withdrawal by him." *Id.* The failure to demand only divested the Debtor of her own ability to withdraw funds from the Trust.

Moreover, this interpretation is consistent with the public policy behind the invalidation of spendthrift protection through control. To reiterate, it is "contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his creditors." *Id.* at 633, 537 A.2d 227. The beneficiary of the Trust annually had the ability to withdraw funds from the Trust and use them to satisfy the accrued debts of her creditors. Each year, this ability was absolute and uncontrolled, and her decision not to exercise that ability should not keep the funds from her creditors.

*E. Income Analysis.*

 The Plaintiff insists that the bankruptcy estate is entitled to all manda-

tory income distributions due and unpaid since the pendency of this bankruptcy case and any voluntary withdrawals that arise during the pendency of this case. *See* Pl.'s Br. 10–14. Although future rights to receive income are generally protected by a valid spendthrift clause, once income is received by a beneficiary or the beneficiary becomes entitled to receive the income, such income is no longer protected under Maryland law. *McCauley v. Hersloff*, 147 B.R. 262, 266–267 (Bankr.M.D.Fla.1992) (analyzing Maryland Trust law and citing *Brent*, 311 Md. at 634–635, 537 A.2d 227). However, for the bankruptcy estate to have an interest, the income must prove itself to be property of the estate by satisfying Section 541 of the Code. *See In re Schauer*, 246 B.R. 384, 387 (Bankr.D.N.D. 2000).

 Section 541(a)(1) includes all legal and or equitable interests, excepting those protected by an applicable nonbankruptcy restriction of a beneficial interest in a trust, "as of the commencement of the case." 11 U.S.C. § 541(a); *see also* 11 U.S.C. § 541(c)(2). Thus, income from the Trust that the beneficiary received before the petition date or to which the beneficiary was entitled, but was held by the trustee as of the commencement of this case, would be estate property. *McCauley v. Hersloff*, 147 B.R. at 266–267. Unlike Chapter 13, however, future income of a Chapter 7 debtor does not automatically become property of the estate. *See* 11 U.S.C. 1306(a).

According to the terms of the Trust, mandatory payments are made at least

---

**10.** The Trust is a residual trust that came into being upon the death of the settlor and his spouse. *See* Def.'s Br., Ex. A. §§ III–IV. There is no indication of when the Trust actually came into being. Since the settlor was obviously not deceased in February of 2006, the date the Trust Agreement was amended, the maximum number of voluntary withdrawals would be six (6)—years 2006–2011. The Debtor's right to demand a voluntary withdrawal for the year 2012 arose post-petition and would not be included in these calculations.

annually. *See* Def.'s Br., Ex. A. § V(A)(1). The trustee has discretion to make payments more frequently, but is not required to do so. *Id.* Voluntary withdrawals are requested in December and paid no later than the end of that next January. *Id.* § V(A)(2). Pursuant to the Debtors Schedules, as amended, it appears that upon the date of commencement, no mandatory distributions were owing, nor had any voluntary withdrawal been requested. *See* Debtors' Amended Schedules B. & C. (Bankr.Docket No. 37). Since no distributions were owed at the time the petition was filed, the "broad provisions of section 541(a)(1) of the Bankruptcy Code do not apply." *See In re Schauer,* 246 B.R. at 387. Instead, post-petition distributions may only be brought into a Chapter 7 estate by operation of Section 541(a)(5).

■ Section 541(a)(5) states that the bankruptcy estate consists of "any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—(A) by bequest, devise, or inheritance . . . ." The Debtor's Schedules show that the beneficiary was entitled to a mandatory payment within 180 days and the Trust Agreement provides that the beneficiary was eligible for a voluntary withdrawal within 180 days of the petition date. *See* Debtors Amended Schedules B. & C. (Bankr.Docket No. 37); *see also* Def.'s Br., Ex. A. § V(A)(2). But these post-petition distributions only become estate property if they are the product of a bequest, devise, or inheritance. *See In re Schauer,* 246 B.R. at 387.

■ "A testamentary trust is itself a testamentary disposition, and a bequest [11] encompasses" gifts of income from such trusts, making post-petition distribution from a testamentary trust property of the estate pursuant to Section 541(a)(5). *See In re Schauer,* 246 B.R. at 388. On the other hand, *inter vivos* trusts do not qualify as bequests, and Section 541(a)(5) fails to bring distributions from an *inter vivos* trust into the bankruptcy estate. *See id.* The Trust in question began as an *inter vivos* trust with the settlor as the beneficiary. *See* Def.'s Br., Ex. A. § II(A). Upon the settlor's death, the original trust dissolved and residuary trust(s) were created either in the name of the settlor's surviving spouse or in the names of the children.[12] *See id.* §§ III–IV. Although, the original trust undoubtedly qualifies as an *inter vivos* trust, the Trust for the benefit of the Debtor appears to be testamentary in nature, created upon the death of the initial settlor and beneficiary by a testamentary substitute for a will. Therefore, any income to which the beneficiary is entitled would become property of the estate if the entitlement occurred within the 180 day period. All other future payments under the Trust would not be property of the estate, and the Plaintiff may not bring them into the estate.

#### F. Fees.

The Court does not believe that an award of fees pursuant to O.C.G.A. § 13–6–11 is proper at this time. Had the Court granted Defendant's Motion, it is obvious that an award should not be grant-

---

11. Bequest is the only term being examined, because a "devise" is a testamentary disposition of land and an "inheritance" is an intestate disposition, neither of which, after reviewing the pleadings, are applicable to this case. *See In re Schauer,* 246 B.R. at 387.

12. Upon whose benefit and when a Trust was created depended on conditions at the time of the settlor's death.

ed. Since the adversary proceeding should not be dismissed, a determination at this juncture into the entitlement of fees would surely prove premature and inappropriate.

### *Conclusion.*

The Court finds that the Plaintiff's Amended Complaint has satisfactorily pled facts upon which relief can be granted. After reviewing the Trust Agreement and analyzing each of the parties respective positions in the light most favorable to the non-moving party, it appears that the Plaintiff can plausibly establish a claim as to a portion of the Trust's corpus and to some of the post-petition income entitlements.

For the reasons set forth above, the Court must deny the Defendant's Motion. Accordingly, it is hereby

**ORDERED** that the *Defendant's Motion to Dismiss Amended Complaint* is **DENIED.**

The Clerk is **DIRECTED** to serve a copy of this ORDER upon the Plaintiff, the Defendant, respective counsel, and the United States Trustee.