**In re Joseph H. HARMAN, Debtor.**

**Neil C. Gordon, Chapter 7 Trustee, Plaintiff,**

v.

**Joseph H. Harman, Linda J. Harman, The Linda J. Harman Irrevocable Trust, J.H.H. Holdings Corporation, First Equities Partners, Inc., First Equities Partners II, Inc., FCGI Associates, LCC., Smith Conerly, LLP, J. Nevin Smith, Shadrix Lane, P.C., and Various John Does, Defendants.**

**Bankruptcy No. 11–67522–MHM. Adversary No. 13–5211.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed Sept. 25, 2014.

Neil C. Gordon, Atlanta, GA, pro se.

Theresa Y. Kananen, Sean C. Kulka, Arnall, Golden, Gregory LLP, Atlanta, GA, for Plaintiff.

James L. Paul, Chamberlain, Hrdlicka, White et al., Gregory S. Brow, David E. Gordon, Gary W. Marsh, McKenna Long & Aldridge LLP, Carl H. Anderson, Jr., Hawkins Parnell Thackston & Young, LLP, John L. Bunyan, Johannes S. Kingma, Tyler J. Wetzel, Carlock, Copeland & Stair, LLP, Atlanta, GA, for Defendants.

## ORDER ON PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

MARGARET H. MURPHY, Bankruptcy Judge.

This proceeding is before the court on Defendants J. Nevin Smith and Smith Conerly, LLP's *Partial Motion for Judgment on the Pleadings* (Doc. No. 90) (the "Motion"). Plaintiff, the Chapter 7 Trustee in Debtor's bankruptcy case (the "Main Case"), filed the complaint initiating this adversary proceeding June 13, 2013, and amended the complaint August 15, 2013 and May 2, 2014 (Doc. No. 1, amended by Docs. No. 19 and 75) (as amended, the "Complaint"). Defendants J. Nevin Smith

("Mr. Smith") and Smith Canerly, LLP ("Smith Conerly"; together with Mr. Smith, the "Smith Defendants") now seek partial judgment on the pleadings, asserting that certain claims Plaintiff made against the Smith Defendants must fail as a matter of law. For the reasons set forth below, the Motion will be granted in part and denied in part.

## Allegations of Fact

In the Complaint, Plaintiff alleges Debtor and the other Defendants have engaged in a scheme to hide Debtor's assets from Debtor's creditors. Prior orders in this adversary proceeding have discussed the alleged scheme extensively (Docs. No. 62 and 63). The "Allegations of Fact" set forth in those orders are incorporated herein by reference; rather than recount the details, this Order will provide only a summary.

Plaintiff alleges Debtor diverts his earnings and assets through alter ego entities into the Linda J. Harman Irrevocable Trust (the "Trust") or to his wife Linda Harman ("Mrs. Harman"). Plaintiff asserts the Trust is invalid and Mrs. Harman is a "strawman," so the assets of each are properly considered property of the estate. Thus, Counts III and IV of the Complaint seek avoidance and recovery of post-petition transfers of assets of the Trust; Counts V–VIII seek avoidance and recovery of pre-petition fraudulent transfers to the Trust; and Counts XVII and XVIII seek avoidance and recovery of post-petition transfers of property nominally titled in Mrs. Harman's name.

Count XXII alleges that the Smith Defendants conspired with Debtor to defraud Debtor's creditors through a particular transaction. Plaintiff asserts Debtor, through his interests in New River Valley Associates, Ltd. ("NRV"),[1] was entitled to

receive proceeds from the sale of an apartment complex in Virginia known as Terrace View (the "NRV Proceeds"). Trustee alleges that, because one of Debtor's creditors, Carolyn McAfee, had served Debtor and Smith Conerly with summonses of garnishment of Debtor's funds, Debtor and the Smith Defendants conspired to divert the NRV Proceeds to be held by Shadrix Lane, P.C. ("Shadrix"), the law firm of Mr. Smith's friend, Gregory Shadrix. The NRV Proceeds were transferred to Shadrix May 25, 2011. That same day, Smith Conerly responded to the summons of garnishment in the negative: it was not then in possession of any property of Debtor. The next day, May 26, 2011, Smith Conerly directed Shadrix to transfer $89,202.18 of the NRV Proceeds to Smith Conerly, and Shadrix complied. Trustee asserts that Shadrix requested to know the matter for which the transfer was being made and that Smith Conerly replied by email, "Joseph H. Harman ... McAfee."

Count XXIII seeks punitive damages due to Debtor's and the Smith Defendants' "willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care that would raise the presumption of indifference to consequences based on their conspiracy, their intentional fraudulent schemes, and intentional breaches of fiduciary duty."

The Smith Defendants argue that, with respect to Counts III, IV, VIII, XVII, and XVIII, they are entitled to judgment as a matter of law under Federal Rule of Civil Procedure 12(c) because Plaintiff has failed to allege specific transfers to the Smith Defendants which might be avoided or recovered. With respect to Counts XXII and XXIII, the Smith Defendants argue they are entitled to judgment as a matter of law because Plaintiff cannot raise the

---

1. Plaintiff alleges Debtor was a limited partner of NRV with a 3.56% ownership interest. Through this ownership interest, Debtor was entitled to receive $257,256 in proceeds from the sale of Terrace View.

causes of actions represented by Counts XXII and XXIII. The Smith Defendants argue: (1) Plaintiff lacks standing to assert a conspiracy claim on behalf of Debtor's creditors; (2) the Bankruptcy Code does not recognize a claim for conspiracy to commit fraudulent transfers; (3) Plaintiff cannot "augment the remedies in the Bankruptcy Code" with state-law causes of action; and (4) because Debtor would be barred from recovery under the conspiracy claim by the doctrine of *in pari delicto*, Plaintiff, standing in Debtor's shoes, must also be barred.

### Standing

Because standing is a. threshold issue, the Smith Defendants' argument that Plaintiff lacks standing to assert claims on behalf of Debtor's creditors will be addressed first. "[T]he irreducible constitutional minimum of standing contains three elements": (1) injury-in-fact; (2) causal connection between the injury and the challenged acts of the defendants; and (3) redressability of the injury by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see, also, Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir.2013). Rather than focusing on the injury, causation, and redressability factors, however, the Smith Defendants argue that Plaintiff lacks "standing" to raise Counts XXII and XXIII because the U.S. Supreme Court in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428–34, 92 S.Ct. ·1678, 1685–88, 32 L.Ed.2d 195 (1972) held that a bankruptcy trustee does not have authority to prosecute a cause of action that Debtor could not have brought himself. Because Plaintiff alleges an injury to Debtor's creditors, rather than to Debtor, the Smith Defen-

dants argue Plaintiff is without authority to raise the claim. The Smith Defendants argue that a Trustee's powers are limited to (1) claims to avoid and recover transfers for the estate under the Bankruptcy Code and (2) causes of action belonging to Debtor and, consequently, the estate.

Plaintiff argues that 11 U.S.C. § 544(a) allows a trustee to stand in the shoes of a hypothetical judgment creditor in bringing state law causes of action. That code section provides

> The trustee shall have, as of the commencement of the case ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

11 U.S.C. § 544(a). Because the code section disjunctively provides "trustee shall have ... the rights and powers of [a judgment lien creditor] *or* may avoid any transfer of property of the debtor," Plaintiff asserts that the statute plainly empowers Trustee to do more than assert avoidance actions. Also, Plaintiff argues that *Caplin* and other cases relied upon by the Smith Defendants are distinguishable, as they involve claims specific to one creditor or class of creditors, as opposed to claims generalized to all creditors.

In *Caplin*, the Supreme Court was asked to determine whether a trustee under Chapter X of the Bankruptcy Act of 1898[2] could assert claims of misconduct

---

**2.** Subsequent courts have commented that the changes enacted in the Bankruptcy Code of 1978 did not change the reasoning of *Caplin*. *See, e.g., E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979 (11th Cir.1990). Few courts have discussed the issue post-BAPCPA, but, as discussed below, the relevant statutes appear unchanged.

against an indenture trustee on behalf of Debtor's debenture creditors. 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). Under the terms of the indenture, the indenture trustee was empowered to take certain action if Debtor's asset to liability ratio fell below 2:1. After Debtor filed for reorganization under Chapter X, the Chapter X trustee determined that the indenture trustee had failed to fulfill its obligations under the indenture, and brought suit. After a thorough review of a trustee's role in Chapter X reorganizations, the Supreme Court determined that the Chapter X trustee did not have standing to assert creditors' claims against the third party indenture trustee. In so ruling, the Supreme Court relied on three observations: (1) "nowhere in the statutory scheme" is the Chapter X trustee given the authority to sue on behalf of third party creditors; (2) the suit would not serve any purpose to the reorganization, because, assuming the suit were successful, the indenture trustee would simply be subrogated to the claims of the debenture holders; and (3) a suit on behalf of the debenture holders may be inconsistent with the independent actions of the debenture holders against the indenture trustee. The third consideration raises a number of concerns—would creditors be bound by the result of the suit? Shouldn't creditors be allowed to "make their own assessment of the respective advantages and disadvantages, not only of litigation, but of various theories of litigation[?]" *Id.* at 428–32, 92 S.Ct. 1678.

Subsequent courts have disagreed as to whether the reasoning in *Caplin* precludes a trustee from asserting claims generalized to all creditors. *See, e.g., Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1348–49 (7th Cir.1987) (trustee is the proper party to bring a generalized claim); *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir.1989) (if a generalized claim, with no particular-

ized injury, could be brought by any creditor of debtor, trustee is the proper person to assert that claim, and creditors are bound by the outcome of trustee's action); *but see, Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118–120 (2d Cir. 1991) ("It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself."); *In re Ozark Restaurant Equip. Co.,* 816 F.2d 1222 (8th Cir.1987). The 11th Circuit has acknowledged the differing analyses, but apparently has not reached the issue itself. *E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979, 986 (11th Cir.1990) (noting that the bankruptcy trustee was "admittedly ... asserting claims of a specific group" of the debtor's creditors and explicitly restricting the holding to the specific facts of that case).

Comparing the factors analyzed in *Caplin* to the "irreducible constitutional minimum" of standing stated in *Lujan v. Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130 complicates the issue. Though *Caplin* referred to the issue discussed therein as "standing," it did not discuss the minimum Article III standing as it is recognized today. *See, e.g., Grede v. Bank of New York Mellon,* 598 F.3d 899 (7th Cir. 2010) (noting that *Caplin's* discussion focused on Trustee's *authority* to raise a claim, rather than the injury, causation, and redressability elements of Article III standing). While *Caplin's* commentary that trustee's suit would not benefit the estate due to subrogation of the claim speaks to the redressability element of standing, the Supreme Court's conclusion—not that the trustee lacked constitutional footing to raise the claim, but that the trustee was not the proper party in interest under the relevant statute— speaks to *prudential* standing. *See, Warth v. Seldin,* 422 U.S. 490, 500–01, 95

S.Ct. 2197, 45 L.Ed.2d 343 (1975) (prudential rules of standing serve to limit the role of the courts in resolving public disputes above and beyond Article III's minimum requirements; the "standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.").

■ Plaintiff clearly meets the minimum elements of standing described in *Lujan*. Taking Plaintiffs allegations as true, the estate has suffered an injury in the form of transfers to third parties of assets properly included in the estate. The alleged acts of the Smith Defendants in conspiring and aiding in those transfers clearly bears a causal connection to the injury. The cause of action, seeking to hold the Smith Defendants liable for civil conspiracy, would serve to redress that injury by recovering assets for the estate or by going towards payment of claims against the estate. The Smith Defendants argue that the alleged injury harmed only Debtor's creditors, but that argument is misplaced; Debtor's creditors are harmed because the estate, comprised of Debtor's assets from which creditors are paid, was harmed. Indeed, the injury, causation, and redressability elements of Trustee's claim for conspiracy to commit fraudulent transfers mirror those of any other fraudulent transfer claim, which bankruptcy trustees routinely raise. The issue raised by the Smith Defendants—whether Trustee has the statutory authority to raise a claim—does not implicate the minimum Constitutional elements of standing; instead, it asks the much more direct question of whether Trustee has the statutory authority to pursue the claims embodied by Counts XXII and XXIII.

■ While acknowledging the difficulty of the question presented, *Caplin* holds that Plaintiff would not have had the statutory authority to raise the cause of action on behalf of Debtor's creditors under the Bankruptcy Act of 1898. "*Nowhere* in the statutory scheme is there any suggestion that the trustee ... is to assume the responsibility of suing third parties on behalf of debenture holders." *Caplin*, 406 U.S. at 428, 92 S.Ct. 1678. Subsequent courts, including the 11th Circuit, have concluded that the statutory authority on which Plaintiff now relies—11 U.S.C. § 544(a)—was embodied in the statutory scheme at the time of *Caplin*. *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir. 1990) ("*Caplin* has been held to remain the law under the revised bankruptcy statutes."), citing *In re Ozark Restaurant Equip. Co.*, 816 F.2d 1222 (8th Cir.1987) ("Congress consolidated former sections 70c and 70e of the Act (11 U.S.C. §§ 110(c), (e) of former title 11) into Sections 544(a) and (b) of the Code, respectively."). Section 70c of the Bankruptcy Act, as amended in 1966, provided,

"[T]rustee shall have as of the date of bankruptcy the rights and powers of (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property ... upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists."

It is difficult to envision how the current form of § 544(a)(1) confers Plaintiff with the power to bring a claim on behalf of Debtor's creditors where Section 70c did not. Courts have also placed import on the fact that Section 544(c), as proposed in the Bankruptcy Reform Act of 1978, would

have explicitly overruled *Caplin,* but that subsection was deleted prior to enactment. *See, e.g., Ozark Restaurant Equip. Co.,* 816 F.2d at 1228, n. 9. Thus, despite Trustee's argument that the claim is a general claim a trustee should be able to pursue, Trustee lacks the statutory authority to pursue a claim, whether generalized or particularized, on behalf of Debtor's creditors, so Count XXII must be dismissed. Similarly, Count XXIII must be dismissed to the extent it seeks punitive damages related to Count XXII.

### Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), incorporated in Federal Rule of Bankruptcy Procedure 7012(b), a court should grant a motion for judgment on the pleadings when no material facts are disputed and the moving party is entitled to judgment as a matter of law. FED. R. BANKR.P. 7012(b); *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1301 (11th Cir.2001). A Rule 12(c) motion filed by the defendant challenges the sufficiency of the complaint like a motion under Rule 12(b)(6). *See In re Dorsey,* 497 B.R. 374, 382 (Bankr.N.D.Ga.2013). Accordingly, Rule 12(c) employs the same legal standard as Rule 12(b)(6). *Id.* This standard requires that for a defendant's motion to be granted, when viewing the pleadings in the light most favorable to the non-moving party, the complaint must contain no set of facts that support "a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlan-*

*tic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, a complaint is insufficient if it contains only " 'naked assertion[s of legal conclusions] devoid of further factual enhancement." *Id.*

### Discussion

The Smith Defendants argue they are entitled to judgment as a matter of law with respect to Counts III, IV, VIII, XVII, and XVIII, because Plaintiff failed to allege specific transfers which Plaintiff seeks to avoid and recover. Other Defendants have raised this same argument; consequently, it has been discussed in detail, and ultimately rejected, in a prior order (Doc. No. 63). After careful consideration, the reasoning of those prior orders applies equally to the Smith Defendants, and is incorporated herein by reference. In short, Plaintiff has alleged a intricate scheme in which each Defendant has played a part to conceal Debtor's assets from Debtor's creditors. Specific to the Smith Defendants, Plaintiff has alleged that the Smith Defendants conspired with Debtor to divert the NRV Proceeds to a third party, out of the reach of Debtor's creditors, and then directed that $89,202.18 of those funds be transferred back to the Smith Defendants. Plaintiff further alleges that the Smith Defendants received at least $20,421.82 from Debtor— exclusive of the $89,202.18—in the 90 days prior to the petition date. Notably, the Smith Defendants were responsible for filing Debtor's Chapter 7 petition and initial documents in the Main Case, and failed to disclose that they held Debtor's funds [3]—

---

**3.** Debtor's Statement of Financial Affairs ("SoFA"), Question 3 asks Debtor to disclose any "payment or other transfer to any creditor made within 90 days immediately preceding the commencement of the case[.]" Question 9 asks Debtor to disclose "all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consol-

idation, relief under the bankruptcy law or preparation of the petition in bankruptcy within one year immediately preceding the commencement of this case." Question 10 asks Debtor to disclose any other transfers not in the ordinary course of business. Debtor is required to list all of his personal property on Schedule B, whether held personally or by another party on Debtor's behalf.

instead, they disclosed only a $25,000 payment in connection with the bankruptcy case. An amendment to Debtor's SoFA filed February 19, 2014—the same day Debtor obtained new counsel after concerns were raised about the Smith Defendants' possible conflicts of interest in these cases—discloses pre-petition transfers to Smith Conerly as a creditor: $10,421.82 April 28, 2011; $10,000.00 May 12, 2011; $39,202.18 May 26, 2011; and $25,000.00 May 26, 2011—a total of $84,624.00. Moreover, Plaintiff has alleged that the Smith Defendants are Debtor's long-time counsel. The allegations in the Complaint relate to Debtor's use of a complex network of legal entities and documents to divert Debtor's assets to Debtor's wife or the Trust, leaving the reasonable inference that the Smith Defendants may have assisted Debtor in his scheme. This inference is bolstered by the Smith Defendants' Answer to the Complaint, in which they declined to admit or deny numerous allegations related to Debtor's alleged scheme, citing attorney-client privilege.

Recognizing a relaxed pleading standard for trustees as stated in *Kipperman v. Onex Corp.*, 2007 WL 2872463 (N.D.Ga. Sept. 26, 2007), Plaintiff's complaint is sufficient to survive at this stage of litigation. *Kipperman* states, "Courts generally take a liberal approach when reviewing allegations of fraud pled by a trustee in bankruptcy because, as an outside party to the transactions in issue, the trustee must plead the claim of fraud for the benefit of the estate and its creditors based upon secondhand knowledge." *Id.; see, also, Picard v. Madoff,* 458 B.R. 87 (Bankr.S.D.N.Y.2011). Plaintiff's allegations regarding the Smith Defendants' receipt of a portion of the NRV Proceeds and other payments less than 90 days prior to the filing of Debtor's petition do implicate the Smith Defendants in Debtor's alleged scheme to hide assets from creditors. As this court has previously found, "the pattern of conduct alleged in the Complaint ... 'raise[s] a reasonable expectation' that discovery may reveal transfers from the Trust to other Defendants" which Trustee seeks to avoid and recover in Counts III and IV (Doc. No. 63, p. 39–40). Similarly, Plaintiff properly pleaded Counts V, VI, and VII, seeking avoidance of various pre-petition transfers of the Trust, (Doc. No. 63, p. 40–42), and, therefore, may recover such transfers from the Smith Defendants, pursuant to Count VIII and 11 U.S.C. § 550, to the extent the Smith Defendants were the entities for whose benefit the transfers were made, or are immediate or mediate transferees of the transfers. And, just as Counts XVII and XVIII were not dismissed against other Defendants implicated in Debtor's alleged scheme, they will not be dismissed as to the Smith Defendants because Plaintiffs allegations " 'raise a reasonable expectation' that discovery will reveal evidence of transfers from Mrs. Harman to other Defendants." (Doc. No. 63, p. 49). Plaintiff has alleged facts sufficient to raise an expectation that discovery will reveal additional transfers. Accordingly, it is hereby

**ORDERED** that the Motion is **granted** with respect to Counts XXII and XXIII and **denied** in all other respects.

IT IS SO ORDERED.